Steve SIZEMORE, Petitioner–Appellee, Cross–Appellant,

v.

Lloyd FLETCHER, Warden, Respondent–Appellant, Cross–Appellee.

Nos. 89–6144, 89–6226.

United States Court of Appeals, Sixth Circuit.

Argued and Submitted Sept. 27, 1990.

Decided Dec. 20, 1990.

John L. Barton, Mary Lewis Chandler Law Office, Paintsville, Ky., for petitioner-appellee cross-appellant.

Steve Sizemore, Wooton, Ky., pro se.

Vickie L. Wise, Asst. Atty. Gen., Carol C. Ullerich (argued), Frankfort, Ky., for respondent-appellant cross-appellee.

Before KEITH and KRUPANSKY, Circuit Judges, and ENGEL, Senior Circuit Judge.

ENGEL, Senior Circuit Judge.

Respondent-appellant Lloyd Fletcher, Warden, appeals a judgment of the United States District Court for the Eastern District of Kentucky, granting a writ of habeas corpus to Petitioner-appellee Steve Sizemore on the ground that prosecutorial misconduct denied Sizemore his right to due process of law, as guaranteed by the fourteenth amendment. Sizemore was convicted of two counts of first degree murder (Ky.Rev.Stat.Ann. § 507.020), and received two concurrent twenty-year sentences. After considering the nature of the alleged constitutional violations raised by the petitioner, we affirm the issuance of the writ.

## I.

On December 18, 1980, local independent coal truck drivers in Clay County, Kentucky met near the Big K Coal Company's processing plant to protest the company's hiring of out-of-state truck drivers to transport coal from the plant. Petitioner Sizemore, who owned an interest in the company, drove toward the plant, where he encountered ten to twelve truckers congregated on a roadway. Sizemore stepped from his truck, armed with a pistol. Willard Morris, a manager of Big K Coal Company, was also present and armed. The independent coal drivers testified at trial that they were unarmed, though Sizemore testified that the drivers were carrying guns. Shots were fired into the group of drivers, and two of them, Ernest Begley and Ray Broughton, were killed.

Sizemore remained at the scene of the shooting, and spoke with the deputy sheriff who arrived soon thereafter. Larry Allan, an attorney who represented Sizemore, also arrived at the coal plant soon after the shooting, and met with Sizemore for about an hour.

On December 19, 1980, a Clay County, Kentucky grand jury returned a two-count indictment against Sizemore, charging him with first degree murder in violation of Ky.Rev.Stat.Ann. § 507.020. Sizemore was tried before a Clay County Circuit Court jury in August 1982. The trial judge declared a mistrial when the jurors voted 11–1 in favor of acquittal, but could not reach a unanimous verdict.

Following a change of venue, Sizemore was tried before a Lee County (Kentucky) Circuit Court jury in July 1983, and convicted on both counts of murder. The court sentenced Sizemore to two concurrent twenty-year terms.

Sizemore appealed his conviction, alleging that prosecutorial misconduct during the closing argument to the jury had created prejudicial error. On October 25, 1984, the Supreme Court of Kentucky affirmed the judgment of the Lee County Circuit Court, finding that the prosecutor's comments were inappropriate but had not denied Sizemore a fair trial.

On October 21, 1985, Sizemore filed a *pro se* motion in the Lee Circuit Court to vacate his sentence under Kentucky RCr 11.42 and a motion for a new trial under CR 60.02. The motion for a new trial was untimely under CR 60.02, and the circuit court did not address that motion. On June 18, 1986, the circuit court denied the merits of Sizemore's RCr 11.42 motion, which alleged that the venue of his second trial was improper, that he had been denied effective assistance of counsel, and that he had been subjected to double jeopardy.

The Kentucky Court of Appeals affirmed the circuit court's decision, except with respect to the ineffective assistance of counsel claim in the RCr 11.42 motion, which the circuit court had failed to analyze under the test set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The court of appeals remanded this question to the circuit court for reconsideration under the *Strickland* standard. None of the matters raised in Sizemore's RCr 11.42 motion has been considered by the Kentucky Supreme Court, which addressed only the question of prosecutorial misconduct.

On August 26, 1988, Sizemore petitioned the United States District Court for the

Eastern District of Kentucky for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that prosecutorial misconduct at his trial violated his due process rights under the fourteenth amendment, that he had been denied effective assistance of counsel, and that his second trial should have been barred by double jeopardy principles. On January 24, 1989, the district court granted Sizemore's motion to amend his petition by striking the unexhausted ineffective assistance of counsel claim.

By report and recommendation dated July 6, 1989, the United States Magistrate recommended that the petition for a writ of habeas corpus be granted. The magistrate found that the prosecutor's comments had denigrated the credibility of Sizemore's attorneys without any basis in fact, had suggested that Sizemore's speedy consultation with counsel was suspect, and had appealed to class prejudice by referring to Sizemore's wealth and his ability to hire several attorneys.

Both Sizemore and Respondent Fletcher filed objections to the magistrate's report in July 1989. By order dated August 9, 1989, the United States District Court for the Eastern District of Kentucky adopted the magistrate's report and granted the writ of habeas corpus, directing the Respondent to release Sizemore from custody unless the Commonwealth of Kentucky began efforts to retry him within 60 days thereafter. Sizemore and Fletcher appeal, with Fletcher challenging the issuance of the writ, and Sizemore arguing that double jeopardy principles bar his retrial. Sizemore is currently on parole.

## II.

In both his direct appeal to the Kentucky Supreme Court and in his application for a writ of habeas corpus, Sizemore raised 68 instances of alleged prosecutorial misconduct during his trial. His primary objections focus upon the Commonwealth of Kentucky's closing argument. In her closing argument, the prosecutor, Julie Goodman, stated:

It happens in all cases. After I hear the defense attorney, I wonder what trial I have been to when they start relaying the evidence to me because I don't half of ... I never heard half of what they tell the jury and I start thinking, "where do we get this fairy tale; what fantacy [sic] is this?" Then I thought, "How appropriate that we are hearing fairy tales from Mr. Burns...."

In response, Lester Burns, one of Sizemore's attorneys, objected to the prosecutor's use of the words "fairy tales and fantacy".

Contrasting her sole effort as prosecutor to that of the seven attorneys employed by Sizemore during the trial, the prosecutor then told the jury that the lawyers "must look to you all ... like Snow White and the seven dwarfs...."

In describing the series of events following the shooting incident, the prosecutor stated:

And then he [Sizemore] snuck out, went out the back way. Did he go to the KSP [Kentucky State Police] Post and give a statement like the truckers did? No. He went out the back way, and how convenient. Who did he go out with? I think we probably stipulated it and we probably all know a thousand times. He went out with his own special convenient attorney, Larry Allen.

MR. BURNS: I object to the complementary [sic] description.

THE COURT: Overruled.

MR. BURNS: Move to set aside the swearing of the jury.

THE COURT: Overruled.

(Ms. Goodman continued) ... who had been with him from within five minutes of the killing to the very end.

And then on the stand today when Stevie said, "Well, I don't have my gun. I think Larry has it." How convenient. Good old Larry takes care of everything.

MR. BURNS: I object.

MR. ALLEN: Your Honor, I do object to that and I move to set aside the swearing of the jury and continue the case.

THE COURT: Overruled.

MR. ALLEN: It's highly prejudicial.

MR. BURNS: Move to admonish the jury.

(Ms. Goodman continued) I think it's highly unethical ...

MR. BURNS: I move to admonish the jury, Your Honor.

(Ms. Goodman continued) I think it's highly wrong ...

THE COURT: The jury has heard the testimony and they know what the testimony is. They're not going to pay any attention to the attorneys' statements.

MS. GOODMAN: Well, thanks, Judge.

THE COURT: Go ahead.

Describing a meeting between Sizemore, his attorney and two witnesses to the shooting, the prosecutor told the jury:

... Just like he [Sizemore] and L.A. White and Gene Cobb did, and Larry Allen, when they all went up to the tipple to talk about what happened.

MR. BURNS: I object.

(Ms. Goodman continued) Got to get our alibi, got to get our story straight.

MR. BURNS: Move to set aside the swearing of the jury.

THE COURT: Objection sustained. I don't think ... I think the testimony was that they didn't go up there to talk about it, the best that I remember. The jury heard the testimony, though, and they can decide what happened.

Objection overruled.

Referring to the ability of Sizemore to present high quality photographic exhibits as part of his defense, the prosecutor said:

He [Sizemore] wants you to know the truth so much. A man with his money, his coal trucks....

MR. BURNS: I object to "his money."
....

THE COURT: Overruled.

Speaking of the state's photographs, the prosecutor stated, "They're not fancy, they're not expensive aerial photographs, they're not big color simulations."

The prosecutor also stated that Sizemore's witnesses had not spoken to the authorities, but had "talked to the defendant and one of his multitude of attorneys." Defense counsel again objected, and the prosecutor continued, "I'll change that to one of his seven attorneys."

Finally, the prosecutor said, "Steve Sizemore would rather kill two men than to give them a raise." Again defense counsel objected, and again the court overruled the objection.

### III.

We recognize that prosecutors must enjoy considerable latitude in presenting arguments to a jury, and that reversal of a conviction should not be ordered when a prosecutor's behavior, even though inappropriate, has not resulted in prejudicial error. *See, United States v. Young,* 470 U.S. 1, 11–12, 105 S.Ct. 1038, 1044–45, 84 L.Ed.2d 1 (1985); *Angel v. Overberg,* 682 F.2d 605 (6th Cir.1982). Statements which might otherwise be prejudicial may be remedied at the time of trial by proper admonishments from the bench to the jury. *United States v. Bess,* 593 F.2d 749, 757 (6th Cir.1979). As Judge Learned Hand observed many years ago, "It is impossible to expect that a criminal trial shall be conducted without some showing of feeling; the stakes are high, and the participants are inevitably charged with emotion." *United States v. Wexler,* 79 F.2d 526, 529–530 (2nd Cir.1935), *cert. denied,* 297 U.S. 703, 56 S.Ct. 384, 80 L.Ed. 991 (1936). Nonetheless, when a prosecutor has made repeated and deliberate statements clearly designed to inflame the jury and prejudice the rights of the accused, and the court has not offered appropriate admonishments to the jury, we cannot allow a conviction so tainted to stand.

We fault both the prosecutor's appeals to wealth and class biases, and her statements concerning Sizemore's consultation with seven attorneys. These comments were sufficient to create prejudicial error, violating Sizemore's rights to due process under the fifth and fourteenth amendments. As the Supreme Court stated decades ago:

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose

obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). This long accepted standard applies equally to attorneys prosecuting defendants on behalf of state governments. *See Webster v. Rees,* 729 F.2d 1078, 1081 (1984). No prosecutor may employ language which denigrates the right of a criminal defendant to retain the counsel of his choice, or otherwise limits the fundamental due process right of an accused to present a vigorous defense.

Our court has identified several factors which must be considered when allegations of prosecutorial misconduct are raised in habeas cases:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidently placed before the jury, and the strength of the competent proofs introduced to establish the guilt of the accused.

*United States v. Leon,* 534 F.2d 667, 679 (6th Cir.1976).

Considering these factors in reverse order, we agree with the observation of the U.S. magistrate here that the "proof of guilt in this case does not appear to have been overwhelming." This is evident from the nature of the proofs and from the fact that at Sizemore's first trial the jury was hung 11–1 in favor of acquittal. We can-

not say beyond a reasonable doubt that the prosecutor's misconduct was harmless error. *See Chapman v. California,* 386 U.S. 18, 26, 87 S.Ct. 824, 829, 17 L.Ed.2d 705 (1967).

With respect to the frequency and deliberateness of the remarks, the trial transcript reveals intentional and repeated attempts by the prosecutor to question Sizemore's motives for consulting with counsel, and she clearly invited the jurors to view Sizemore's ability to hire several attorneys with suspicion.

 Finally, considering the first factor of the *Leon* test, we believe the prosecutor's comments could have misled the jury and were prejudicial. A prosecutor may not imply that an accused's decision to meet with counsel, even shortly after the incident giving rise to a criminal indictment, implies guilt. Neither may she suggest to the jury that a defendant hires an attorney in order to generate an alibi, "take[ ] care of everything" or "get ... [his] story straight." Such statements strike at the core of the right to counsel, and must not be permitted. *See United States v. McDonald,* 620 F.2d 559, 564 (5th Cir.1980); *United States ex rel. Macon v. Yeager,* 476 F.2d 613, 616–17 (3d Cir.), *cert. denied,* 414 U.S. 855, 94 S.Ct. 154, 38 L.Ed.2d 104 (1973).

Similarly, statements by the prosecutor at Sizemore's trial suggested to the jury that the defendant could afford to buy justice in court through the use of expensive exhibits and multiple defense attorneys. The prosecutor's references to the defendant's "money", his "multitude of attorneys", and the statement that Sizemore "would rather kill two men than to give them a raise" were all calculated to generate a class bias in the jurors' minds against the defendant. Such appeals to class prejudice must not be tolerated in the courtroom. "The defendant was charged with murder, and not with being wealthy, and no reference should have been made to his station in life." *Goff v. Commonwealth,* 241 Ky. 428, 44 S.W.2d 306, 308 (1931). *See also United States v. Socony–Vacuum Oil Co.,* 310 U.S. 150, 239–40, 60 S.Ct. 811,

851–852, 84 L.Ed. 1129 (1940); *United States v. Stahl*, 616 F.2d 30, 32–33 (2d Cir.1980).

We recognize that not all questionable prosecutorial conduct commands issuance of the writ. *Cf. Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) (habeas was unavailable when prosecutor stated his opinion regarding the defendant's guilt and the defendant's wishes for a guilty verdict, and a curative instruction from the bench was given); *Webster v. Rees*, 729 F.2d 1078 (6th Cir. 1984) (habeas unavailable when prosecutor called the defendant a liar in closing argument and improperly displayed a gun which had not been introduced as evidence).

We also recognize that great deference is due the trial judge in managing the proceedings of a criminal trial. As Chief Justice Hughes wrote many years ago, "the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law." *Quercia v. United States*, 289 U.S. 466, 469, 53 S.Ct. 698, 698–99, 77 L.Ed. 1321 (1933). Here, however, the trial judge repeatedly overruled defense objections to the prejudicial statements of the prosecutor. He also failed at the conclusion of the closing arguments to provide the jury with any admonishments which might have mitigated the damage caused by the prosecutor's statements. This repeated failure to caution the jury and counsel not only failed to cure the errors made, but was bound to imply that the right to counsel was of little or no consequence and that exercise of that right was somehow indicative of guilt.

## IV.

Sizemore has also raised an ineffective assistance of counsel claim in his habeas petition. This claim, however, was voluntarily stricken from Sizemore's petition in the district court when the U.S. district judge properly determined that Sizemore had failed to exhaust his state remedies on this claim. To allow Sizemore to proceed with the petition, the district court granted Sizemore's motion to amend his petition by deleting that unexhausted claim in keeping with the Supreme Court's decision in *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). As a result we need not address this claim from the original petition.

 Sizemore also raises the double jeopardy clause of the fifth amendment in his petition, arguing that his second trial in Lee County, Kentucky which resulted in his conviction, was barred by double jeopardy, and that he should not now be subject to a third trial following the issuance of a writ of habeas corpus. Sizemore contends that the prosecution conspired to cause a mistrial by placing a person hostile to the defense on the jury at his original trial in Clay County, Kentucky. This claim was not brought to the Kentucky Supreme Court however, and therefore has not been exhausted as required by 28 U.S.C. § 2254(b). *See Banner v. Davis*, 886 F.2d 777, 782 n. 2 (6th Cir.1989). We note that in the absence of intentional government action designed to cause a mistrial, "such a discharge constitutes no bar to further proceedings and gives no right of exemption to the prisoner from being again put upon trial," *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824), and the "trial judge's decision to declare a mistrial when he considers the jury deadlocked is ... accorded great deference by a reviewing court." *Arizona v. Washington*, 434 U.S. 497, 510, 98 S.Ct. 824, 832–33, 54 L.Ed.2d 717 (1978).

Sizemore contends that he attempted to appeal this issue to the Kentucky Supreme Court, but was prevented from doing so by the bad faith actions of the Kentucky Court of Appeals. That court found no evidence in the record to support Sizemore's allegation that the prosecution conspired to place a person hostile to the defense on the jury at his first trial. Even were we to find that Sizemore did exhaust his remedies in state court, we have not been presented with convincing evidence to indicate that the decision of the Kentucky Court of Appeals on the jeopardy claim was clearly erroneous. The question of bias of an individual juror at a state criminal trial is a question of fact

subject to the 28 U.S.C. § 2254(d) presumption of correctness for state court findings of fact in subsequent federal habeas corpus proceedings. *Smith v. Phillips*, 455 U.S. 209, 218, 102 S.Ct. 940, 946–47, 71 L.Ed.2d 78 (1982). Absent evidence that the first trial ended without a verdict for reasons of the prosecution's making, as was true in *Saylor v. Cornelius*, 845 F.2d 1401 (6th Cir.1988), we decline to find that the second trial was barred by double jeopardy.

■ Finally, we also disagree with Sizemore's contention that the Commonwealth of Kentucky should be barred from retrying him after the writ of habeas corpus is issued.

> It has long been settled ... that the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction.

*Lockhart v. Nelson*, 488 U.S. 33, 38, 109 S.Ct. 285, 289, 102 L.Ed.2d 265 (1988) (citations omitted). A writ of habeas allows those who have been denied fundamental rights to be released from custody; it does not however prevent the retrial of persons alleged to be guilty of crimes. Sizemore is free of course to raise the double jeopardy claim in state court should he be retried hereafter.

Accordingly the judgment of the district court is AFFIRMED and REMANDED for issuance of the conditional writ.