951 F.2d 349
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jason M. GRIMES, Petitioner-Appellant,
v.
H.D. WELLS, Respondent-Appellee.
 No. 91-1532.
 United States Court of Appeals, Sixth Circuit.
 Dec. 17, 1991.
 
 Before KENNEDY and NATHANIEL R. JONES, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner, Jason Grimes appeals the district court's denial of his petition for a writ of habeas corpus, alleging that he was deprived of his constitutionally protected right to a fair trial and his right against self-incrimination at his trial in state court.
 
 I.
 
 2
 Petitioner was sentenced to life imprisonment after being convicted for the second degree murder of his 3-month old son, Jacob Grimes. In early February, petitioner brought his infant son to the emergency room at Garden City Hospital, because the mother was complaining that the child had a temperature of 102 degrees, that there was a rash on his face and he had a swollen lip. In addition, hospital medical personnel observed that the child had large bruises on his body. The hospital staff suspected child abuse, and made a referral to the proper authorities that an investigation should be conducted.
 
 
 3
 Two weeks later, the child was brought to the emergency room at Wayne County Hospital, and medical personnel stated that the infant was in a comatose condition. In addition, the child suffered from poor color, multiple bruises, broken bones, detachment and bleeding of the retinas, and enlarged liver, swollen brain tissue and abnormal leg movements.
 
 
 4
 The child was transferred to Mott Hospital in Ann Arbor and put on a ventilator. On February 24, 1984 the infant died of severe head trauma and related complications.
 
 
 5
 At trial, a number of doctors testified that the infant's injuries were caused by severe shaking. Specifically the doctors concluded that the child suffered from "shaken baby syndrome" which is a form of child abuse caused when a baby is taken by the trunk or head and shaken back and forth.
 
 
 6
 Petitioner testified that he accidently bumped the child's head against a door frame. In addition, he conceded that he did shake the child, but only in an effort to wake him up when he discovered the baby to be unconscious. Petitioner also claimed that he slapped the child, but also only to revive him.
 
 
 7
 The prosecution presented numerous doctors who testified that the infant's injuries could not have been caused by an innocent bump on the head, or casual shaking designed to wake the child up. They also testified that the child's injuries could not have been self-inflicted, as children of that young age are not able to move rapidly enough to cause such severe trauma. Instead, they testified that these injuries must have been caused by another person, as certain fractured bones could only be caused by another applying a twisting force to the baby's limbs. The physicians concluded that the child's injuries were caused, not by accident, but by child abuse.
 
 
 8
 Based on the evidence presented at trial on January 29, 1985 the jury returned a conviction against petitioner, finding him guilty of second-degree murder. On February 13, 1985, petitioner was sentenced to life imprisonment.
 
 
 9
 Petitioner appealed as of right to the Michigan Court of Appeals, which affirmed his conviction on August 19, 1987. The Michigan Supreme Court denied leave to appeal on January 29, 1988. Subsequently, the Wayne County Circuit Court denied petitioner's application for leave to file a motion for a new trial on May 15, 1989. The Michigan Court of Appeals denied petitioner's application for leave to appeal the circuit court's denial on August 31, 1989. The Michigan Supreme Court again denied leave to appeal on April 30, 1990.
 
 
 10
 On May 29, 1990, petitioner, aided by counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(b)(1)(B), the district court referred the matter to a United States Magistrate for report and recommendation. The magistrate issued a report recommending that the district court deny petitioner's request. Petitioner filed written objections to the magistrate's proposed recommendation.
 
 
 11
 On April 18, 1991 the district court adopted the recommendations of the magistrate, and denied petitioner's application for a writ of habeas corpus. On May 3, 1991 petitioner filed a timely notice of appeal.
 
 II.
 
 12
 Petitioner first argues that when the trial judge informed the jury that the appellant requested that a manslaughter instruction be read, the effect was tantamount to the judge ordering a directed verdict, and thus constitutes constitutional error cognizable under habeas corpus.
 
 
 13
 In the instant case, the trial judge stated: "I'm going to instruct you with respect to the charge of second degree murder and the lesser included offenses which defendant has asked you to consider." Joint Appendix at 629. In addition, the judge later commented: "The defendant has asked that you be instructed on the lesser included offense of voluntary manslaughter." Joint Appendix at 632. Both parties agree that the judge's comment as to the source of the proposed jury instruction was improper as a matter of state law. People v. Hunter, 370 Mich. 262, 267 (1963); People v. Fry, 55 Mich.App. 18, 23-24 (1974).
 
 
 14
 However, simply because a jury instruction violates state law does not give a petitioner the right to habeas corpus relief. Wood v. Marshall, 790 F.2d 548, 551 (6th Cir.1986), cert. denied, 479 U.S. 1036 (1987); Watters v. Hubbard, 725 F.2d 381, 383 (6th Cir.), cert. denied, 469 U.S. 837 (1984). When reviewing a state criminal conviction in habeas proceedings, the court will not assess jury instructions as if they were before the court on direct appeal:
 
 
 15
 Before a federal court may overturn a conviction resulting from a state trial ... it must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.
 
 
 16
 Cupp v. Naughten, 414 U.S. 141, 146 (1973).
 
 
 17
 In this case, petitioner argues that the effect of the judge's instruction was to direct a verdict for the respondent. However, petitioner failed to cite any relevant case law which equates a judge's disclosure of the source of instructions with a directed verdict. Therefore, the jury instruction in the instant case does not rise to the level of constitutional error.
 
 
 18
 Moreover, even if the jury instruction was improper, in a habeas proceeding, it must be evaluated in the context of the overall charge and not in "artificial isolation." Engle v. Kohler, 707 F.2d 241, 244 (6th Cir.1983), aff'd, 466 U.S. 1 (1984). In the case at bar, petitioner's trial was marked by numerous instances where the jury was informed by the petitioner that manslaughter was a more viable theory than second degree murder. Joint Appendix at 554-55. In addition, the prosecutor made several comments to the effect that petitioner believed that the evidence supported only a manslaughter, and not a murder, conviction. Joint Appendix at 587, 589-91. The petitioner never objected to these comments.
 
 
 19
 Since the jury was likely to already know that petitioner preferred a manslaughter conviction to a murder conviction, we find that the petitioner did not carry his heavy burden of demonstrating that the trial judge's comments, considered in the context of the trial, resulted in a denial of due process. Williams v. Lockhart, 736 F.2d 1264, 1267 (8th Cir.1984). See, e.g., United States v. Guillette, 547 F.2d 743, 750 (2d Cir.1976) ("[I]solated improper comments by the trial judge do not compel reversal if the instruction is otherwise correct and nonprejudicial."), cert. denied, 434 U.S. 839 (1977).
 
 III.
 
 20
 Petitioner's trial counsel made no request for a jury instruction on the defense of accident. Petitioner now contends, however, that the trial court's failure to sua sponte instruct the jury on the defense of accident entitled him to habeas corpus relief. We disagree.
 
 
 21
 Petitioner contends that as a matter of Michigan law, the trial judge was required to sua sponte instruct the jury on the defense of accident. However, whether this issue is cognizable under habeas is not a question of state law, but only a matter of whether constitutional error has resulted. Cupp, 414 U.S. at 146. Thus, the operative inquiry is whether the judge's failure to sua sponte instruct the jury as to the defense of accident violated due process.
 
 
 22
 The trial judge's failure to instruct the jury on a defense is not a basis for habeas corpus relief "unless the error rendered the trial so fundamentally unfair as to deny due process." Shepard v. Nelson, 432 F.2d 1045, 1046 (9th Cir.1970). Where the petitioner never requests that a defense instruction be given, and where the trial judge has no reason to believe that petitioner intends to rely on such a defense, the trial judge's failure to give a sua sponte instruction will not offend due process. Butcher v. Marquez, 758 F.2d 373, 377 (9th Cir.1985); Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir.), cert. denied, 469 U.S. 838 (1984). Moreover, the failure to give a defense instruction "does not deprive the defendant of his constitutional right to due process if the evidence produced during trial was insufficient to warrant such an instruction." Allen v. Morris, 845 F.2d 610, 617 (6th Cir.1988), cert. denied, 488 U.S. 1011 (1989); Melchoir v. Jago, 723 F.2d 486, 493-94 (6th Cir.1983), cert. denied, 466 U.S. 952 (1984).
 
 
 23
 In the instant case, we believe that the trial judge's failure to sua sponte instruct the jury as to a possible defense did not prejudice petitioner's due process rights. First, the evidence presented at trial was such that it would not have put the judge on notice that petitioner sought an accident defense. Indeed, accident did not appear to be the petitioner's theory of the case. Secondly, under Allen, it did not appear that there was sufficient evidentiary support for an accident defense. In fact, the uncontradicted testimony of numerous experts demonstrated that accident was not a viable explanation for the infant's death. Finally, the magistrate supported the trial judge's failure to give an accident instruction based on the fact the jury chose to convict the petitioner on the highest count submitted to them. Under the circumstances, the evidence was so overwhelmingly aligned against the petitioner that an accident instruction would not likely have had any effect on the verdict.
 
 
 24
 In the alternative, petitioner argues that he was denied the effective assistance of counsel. We likewise find this argument to be without merit.
 
 IV.
 
 25
 Petitioner next challenges certain statements made by the prosecutor which he argues constitutes prosecutorial misconduct which deprived him of a fair trial.
 
 
 26
 Defendants face a high burden in seeking to reverse a conviction because of prosecutorial misconduct. Unless the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process," an appellate court will not reverse the conviction. Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. De Christoforo, 416 U.S. 637 (1974)). In habeas corpus proceedings, this court has employed a four-factor analysis to determine whether the conduct is so egregious as to render the trial fundamentally unfair. In every case, this court considers "the degree to which the remarks complained of have a tendency to mislead the jury and prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidently placed before the jury, and the strength of the competent proofs introduced to establish the guilt of the accused." Sizemore v. Fletcher, 921 F.2d 667, 671 (6th Cir.1990) (quoting United States v. Leon, 534 F.2d 667, 679 (6th Cir.1976)). This test recognizes that "prosecutors must enjoy considerable latitude in presenting arguments to a jury, and that reversal of a conviction should not be ordered when a prosecutor's behavior, even though inappropriate, has not resulted in prejudicial error." Sizemore, 921 F.2d at 670.
 
 
 27
 In the present case, given the overwhelming strength of the evidence adduced against petitioner, we find that the comments made by the prosecutor, taken as a whole, were not sufficiently egregious to deny petitioner due process of law. Even though certain comments may have been improper, they do not rise to the level of constitutional error which would entitle petitioner to habeas corpus relief.
 
 
 28
 In addition, petitioner challenges certain evidence elicited by the prosecutor which was admitted into evidence. Because we find that these evidentiary errors did not rise "to the level of depriving the defendant of fundamental fairness," petitioner's claims are not remediable on a petition for habeas corpus relief. Matlock v. Rose, 731 F.2d 1236, 1242 (6th Cir.1984), cert. denied, 470 U.S. 1050 (1985).
 
 V.
 
 29
 Finally, petitioner contends that certain testimony given by the pathologist was improper. The pathologist testified that the petitioner never contacted him to discuss the cause of injury. Petitioner argues that such testimony called on petitioner to explain his silence. In addition, petitioner argues that the reference to his failure to contact the pathologist implied that he had an obligation to disprove the pathologist's conclusions. Petitioner contends that this impermissibly shifted the burden of proof to the defendant. For the following reasons, we disagree.
 
 
 30
 In Beam v. Foltz, 832 F.2d 1401 (6th Cir.1987), cert. denied, 485 U.S. 980 (1988), the Sixth Circuit was confronted to a fact situation analogous to that of the instant case. In Beam, the petitioner challenged a prosecutor's remark which he argued had the effect of shifting the burden of proof by telling the jury that petitioner had a duty to produce evidence of his innocence in the form of additional blood tests. Id. at 1407. The court, however, said that this statement was not cognizable on habeas corpus because defense counsel raised the issue of the inadequacy of the blood tests, and the prosecutor "is ordinarily entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel." Id., quoting Angel v. Overberg, 682 F.2d 605, 607-08 (6th Cir.1982) (en banc). In weighing the totality of the circumstances, the court did "not believe either that the jury could have been under any misapprehension as to what the law actually requires or that the prosecutor's statement was so egregious as to render the trial fundamentally unfair." Id. at 1408. The court thought it significant that the jury instructions on the burden of proof "left no room for doubt" that the trial was not unfair. Id. In addition, the petitioner did not object to the challenged comments at trial, which the court found to weigh against a finding of prejudicial error. Id. citing United States v. Bess, 593 F.2d 749, 757 (6th Cir.1979) (in context of direct appeal, failure to object to prosecutor's comment negates likelihood of reversible error).
 
 
 31
 In the case at bar, the issue challenged by petitioner was raised by petitioner's attorney on cross-examination of the pathologist. Defense counsel's purpose in raising this issue was to support an argument that the pathologist had arrived at an unfair, one-sided opinion. U.S. Magistrate's Report, Joint Appendix at 32. The prosecution, in rebuttal, questioned the pathologist about the petitioner's failure to contact him. Petitioner never objected to this questioning at trial.
 
 
 32
 Whatever the purpose for raising the issue, it is clear that petitioner did raise the issue first. Thus, the prosecutor was entitled to some latitude in rebutting this argument. We do not believe that the prosecutor's questioning in rebuttal constituted error which resulted in a trial which was fundamentally unfair. First, like in Beam, the trial court judge properly instructed the jury that the state, and not petitioner, bore the burden of proof. Joint Appendix at 620. Thus, there was little likelihood that the jury could have been under any misapprehension. Second, as in Beam, there was no contemporaneous objection at trial, which weighs in favor of not finding a fundamental error. Third, "the prosecutor [did] not seem to have tried deliberately to mislead the jury, and the eyewitness testimony against the accused was very strong." Beam, 832 F.2d at 1408. Therefore, "[e]ven if this were a direct appeal, these factors would militate against our upsetting the verdict of the jury, and in a habeas corpus case they militate still more strongly in favor of letting the verdict stand." Id. (citations omitted). For the above reasons, we believe that the petitioner's fourth assignment of error must also fail.
 
 VI.
 
 33
 For the reasons set forth above, the judgment of the district court is AFFIRMED.