9 F.3d 1548
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Wayne E. HEINISH, Petitioner-Appellant,
v.
Arthur TATE, Jr., Warden, Respondent-Appellee.
 No. 92-3414.
 United States Court of Appeals, Sixth Circuit.
 Nov. 9, 1993.
 
 Before: KENNEDY and RYAN, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner-appellant, Wayne E. Heinish, appeals from an order of the district court dismissing his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.
 
 
 2
 * Heinish was convicted by jury of aggravated murder, kidnapping, and attempted rape of his stepdaughter Vicki Patterson. After the penalty phase hearing, the jury recommended the death penalty. Heinish was sentenced to death. On direct appeal, the Ohio Court of Appeals reversed the conviction for kidnapping, concluding that it was based upon insufficient evidence. On appeal to the Ohio Supreme Court, the conviction for attempted rape was reversed, the court concluding that it, too, was based upon insufficient evidence. State v. Heinish, 553 N.E.2d 1026 (Ohio 1990). Accordingly, Heinish's conviction for aggravated murder was reduced to murder. The case was remanded to the trial court for resentencing, and Heinish was sentenced to serve fifteen years to life. Heinish's appeal of this new sentence was denied in the Ohio state courts.
 
 
 3
 Heinish then filed his petition for writ of habeas corpus in the district court, raising three issues. First, Heinish argued that the trial court, by its exclusion of competent and probative evidence of his innocence, denied him due process, a fair trial, the right to counsel, and the right to compulsory process. Second, he asserted that he was unlawfully convicted of murder because the record is devoid of evidence of a purposeful killing. Third, he contended that prosecutorial misconduct permitted the state to rebut a defense which he was not permitted to introduce, i.e., the defense that someone else committed the crimes. The petition was referred to a magistrate judge, who recommended that the petition be dismissed. Over Heinish's objections, the district judge adopted the report and recommendation and dismissed the petition on March 30, 1992. Heinish appeals the same issues to this court.
 
 II
 
 4
 We review de novo the district court's order dismissing the writ of habeas corpus. Carter v. Sowders, 1993 WL 374178 at * 3 (6th Cir. Sept. 27, 1993). "But the more substantive standard by which our de novo review is conducted is the determination whether the trial errors asserted by the petitioner resulted in a trial so devoid of fairness as to have amounted to a denial of the due process guaranteed by the Fourteenth Amendment." Lundy v. Campbell, 888 F.2d 467, 469 (6th Cir.1989), cert. denied, 495 U.S. 950 (1990). We defer to state court factual findings if supported by evidence. Id.
 
 III
 
 5
 Heinish first contends that the trial court committed constitutional error by excluding evidence that tended to establish his innocence by suggesting that someone else may have committed the crime. Specifically, Heinish attempted to introduce evidence including court records that allegedly would have shown that Vicki Patterson, the victim, had, shortly before her death, been physically assaulted by two girls. Heinish further attempted to introduce a journal entry of conviction of the victim's former step-father, Robert Bryner. Allegedly, Bryner had been convicted of domestic violence and had threatened Patterson in the past. Further, testimony would have allegedly revealed that Bryner had been seen in a parked vehicle outside of the Heinish house on two occasions.
 
 
 6
 An oral motion in limine to exclude Heinish's evidence was raised by the prosecution. The trial court granted the motion and excluded all such evidence. The trial judge concluded, in essence, that defense counsel had not shown a sufficient nexus between the offered evidence and the death of the victim.
 
 
 7
 The right of an accused in a criminal trial to due process includes "the right to a fair opportunity to defend against the state's accusations ... [, and the right] to call witnesses in one's own behalf...." Chambers v. Mississippi, 410 U.S. 284, 294 (1973). "Few rights are more fundamental than that of an accused to present witnesses in his own defense." Id. at 302. In federal prosecutions, "[a] defendant is entitled to introduce evidence which tends to prove someone else committed the crime." United States v. Perkins, 937 F.2d 1397, 1400 (9th Cir.1991). In a habeas corpus action, "[f]ederal courts have granted relief from state convictions when the trial court arbitrarily excluded evidence tending to show that another person might have committed the crime. They have done so, however, only when there was some demonstration connecting another person to the particular crime for which the defendant was on trial." Cikora v. Dugger, 840 F.2d 893, 898 (11th Cir.1988). The Ninth Circuit noted:
 
 
 8
 The defendant certainly has a strong interest in presenting exculpatory evidence, but the state has an interest in promoting reliable trials, particularly in preventing the injection of collateral issues into the trial through unsupported speculation about the guilt of another party. Due process may require a trial court to allow the introduction of evidence of another party's possible guilt when there is some showing of a nexus between the other party and the particular crime with which a defendant is charged.
 
 
 9
 Id.
 
 
 10
 Although the proffered evidence in this case may have been somewhat relevant, its exclusion did not rise to the level of a constitutional violation. Heinish did not demonstrate a sufficient nexus between the crime and the evidence sought to be introduced.[1] The proffered evidence would not have closely tied any of the three individuals in time and space to the victim's death. Its admission, arguably, would have only served to confuse the issues, mislead the jury, and cause undue delay. See Ohio R. of Evid. 401, 403(A) and 403(B). We therefore agree with the district court that no constitutional error resulted from the trial court's exclusion of the evidence.
 
 IV
 
 11
 Heinish next contends that the lack of eyewitness testimony and the lack of physical evidence forced the prosecution to rely upon circumstantial evidence which was wholly inadequate to prove that a purposeful killing occurred. He notes that the coroner testified that he could not establish a purposeful killing. Further, he argues that the burning of the body cannot be used to establish a purposeful killing because that burning "unquestionably took place post-mortem," and because the act of an offender in covering up evidence of the crime may show guilty knowledge, but it does "not distinguish guilty knowledge of a murder from guilty knowledge of manslaughter."
 
 
 12
 The Due Process Clause of the Fourteenth Amendment requires a state to prove beyond a reasonable doubt every fact necessary to constitute the charged offense. In re Winship, 397 U.S. 358, 363-64 (1970). In evaluating an insufficient evidence claim in a petition for habeas corpus, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Any conflicting inferences arising from the record, including credibility conflicts, should be resolved in favor of the prosecution. Walker v. Engle, 703 F.2d 959, 969-70 (6th Cir.), cert. denied, 464 U.S. 962 (1983). This court has noted:
 
 
 13
 The standard is not whether the evidence is sufficient to convince the habeas court of the petitioner's guilt beyond a reasonable doubt. Nor does the standard require the prosecution to rule out every hypothesis except that of guilt beyond a reasonable doubt.
 
 
 14
 Scott v. Perini, 662 F.2d 428, 431-32 (6th Cir.1981) (citing Jackson, 443 U.S. at 326) (footnotes omitted), cert. denied, 456 U.S. 909 (1982).
 
 
 15
 The only element of the murder charge at issue is "purposeful." In Ohio, one acts purposely "when it is his specific intention to cause a certain result...." Ohio Rev.Code Ann. § 2901.22(A) (Anderson 1993). Purposeful intent may be established through, and murder convictions may rest upon, circumstantial evidence. State v. Lott, 555 N.E.2d 293 (Ohio), cert. denied, 111 S.Ct. 591 (1990).
 
 
 16
 Although the coroner could not conclude that the killing was purposeful, he did testify that the victim died because of "homicidal violence." Because of the condition of the victim's body, the coroner could not point to a specific cause of death. He indicated, however, that the death could have been caused by trauma to the face; by internal hemorrhaging of the neck, which was possibly the result of strangulation; or by burning. Any one of those possibilities could support the conclusion of a purposeful act. Moreover, even if the burning occurred after death, the burning itself could, in part, support a conclusion of a purposeful killing. Upon a thorough review of the record, we are satisfied that the evidence of purposeful intent was not constitutionally insufficient.[2]
 
 V
 
 17
 Finally, Heinish contends that the state committed prosecutorial misconduct, centering around the alleged possible involvement of the victim's former step-father, Robert Bryner, in the death of Vicki Patterson, thus denying Heinish of his right to a fair trial.
 
 
 18
 Defendants face a high burden in seeking to reverse a conviction because of prosecutorial misconduct. Unless the alleged misconduct " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process,' " an appellate court will not reverse the conviction. Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. De Christoforo, 416 U.S. 637 (1974)). In habeas corpus proceedings, this court has employed a four-factor analysis to determine whether the conduct is so egregious as to render the trial fundamentally unfair:
 
 
 19
 In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidently placed before the jury; and the strength of the competent proofs introduced to establish the guilt of the accused.
 
 
 20
 Sizemore v. Fletcher, 921 F.2d 667, 671 (6th Cir.1990) (quoting United States v. Leon, 534 F.2d 667, 679 (6th Cir.1976)). This test recognizes that "prosecutors must enjoy considerable latitude in presenting arguments to a jury, and that reversal of a conviction should not be ordered when a prosecutor's behavior, even though inappropriate, has not resulted in prejudicial error." Id. at 670. In addition, the harmless error standard applies to claims of prosecutorial misconduct. See Eberhart v. Bordenkircher, 605 F.2d 275, 278 (6th Cir.1979).
 
 
 21
 Upon the examination of the victim, saliva was found on her jeans from a person with an "A" blood type. Heinish is a type "A" secretor.[3] During the cross-examination of Richard Hutchinson, a sergeant with the Ranger Department of the Cleveland Metro Park System, defense counsel asked Hutchinson whether he had interviewed and taken a sample of blood from Bryner. Hutchison indicated that he had interviewed him, but that he had not taken a blood sample. On redirect, the prosecutor asked Hutchinson whether there was any indication that any of the people named by defense counsel on cross-examination, including Bryner, had been involved in the case. Defense counsel objected, and the court overruled the objection. Hutchinson answered "not that I could determine."
 
 
 22
 During closing argument, the prosecutor stated that Bryner had type "O" blood. Defense counsel objected, and the court responded by stating that "[t]he jury will use its best recollection of the testimony." Additionally, the prosecutor stated that Mr. Bryner had been "checked out." Once again, defense counsel objected.
 
 
 23
 The prosecutor's remarks that Bryner had been investigated and had "checked out" were fair comments upon the evidence and therefore did not amount to prosecutorial misconduct.
 
 
 24
 The comment regarding Bryner's blood type during closing, however, was clear error. Defense counsel had objected to the prosecution introducing this evidence at trial, and the court had sustained that objection. The comment was thus made on an alleged fact not in evidence. It also appears that this remark was not accidental.
 
 
 25
 We are convinced, however, that the prosecutor's comment did not so infect the trial that Heinish was denied a fundamentally fair trial. See Donnelly, 416 U.S. at 645. Additionally, although the trial court did not specifically sustain the objection, it did immediately instruct the jury to decide the case on the evidence. This instruction lessened the prejudicial effect that the prosecutor's comment might have had on the jury. See id. at 644 (sustaining of objection cures any prejudice that may result from prosecutor's comments).
 
 
 26
 In sum, we are satisfied that Heinish's trial was not fundamentally unfair. Lundy v. Campbell, 888 F.2d 467, 469-70 (6th Cir.1989), cert. denied, 495 U.S. 950 (1990).
 
 VI
 
 27
 Accordingly, the judgment of the district court, denying Heinish's petition for a writ of habeas corpus, is AFFIRMED.
 
 
 
 [1]
 The Ohio Supreme Court stated: "The fact that these matters fail to place other parties at the crime scene or fail to demonstrate how other parties had the opportunity to commit the crime illustrates that they fail to meet the foundational requirements necessary for their admissibility." State v. Heinish, 553 N.E.2d 1026, 1035 (Ohio 1990)
 
 
 [2]
 In addition to the coroner's testimony, the jury had much circumstantial evidence and hard facts before it on which to base its factual finding of purposeful homicide. See State v. Heinish, 553 N.E.2d at 1034
 
 
 [3]
 A "secretor" is one who secretes his blood type in his bodily fluids