KAREN NELSON MOORE, Circuit Judge,
dissenting.
I respectfully dissent and would grant the petition for a writ of habeas corpus with respect to Perkins’s claim that defense counsel was ineffective for failing to object to the prosecutor’s repeated references to Perkins’s “paid” defense counsel during rebuttal closing arguments.[1]
The state court addressed Perkins’s ineffective-assistance-of-counsel claim. Michigan v. Perkins, No. 250159, 2004 WL 2535107, at *7-8 (Mich.Ct.App. Nov. 9, 2004). Thus, “because the AEDPA applies to [Perkins’s] petition, we can only consider [his] challenge within the more limited assessment of whether the state court’s application of Strickland to the facts of this case was objectively unreasonable.” Washington v. Hofbauer, 228 F.3d 689, 702 (6th Cir.2000) (citing Williams v. Taylor, 529 U.S. 362, 408-09, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). With respect to Perkins’s claim that his counsel was ineffective for failing to object to the prosecutor’s improper comments denigrating defense counsel,[2] the state court relied on its eon *834 elusion regarding the underlying prosecutorial-misconduct claim — that Perkins “was not so prejudiced by these comments that he was denied a fair trial” — to conclude that “defense counsel’s failure to object to these comments did not amount to ineffective assistance of counsel.” Perkins, 2004 WL 2585107, at *7.
I conclude, however, that the state court’s analysis of prejudice resulting from the prosecutor’s misconduct is an unreasonable application of clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1). Specifically, it was unreasonable for the state court to conclude that Perkins was not prejudiced by the prosecutor’s improper comments because the comments directly implicated Perkins’s Sixth Amendment right to counsel.
The prosecutor’s arguments amounted to repeated accusations that defense counsel was lying simply because he was paid to represent Perkins. The prosecutor said:
.... This is a guy who represents a criminal, okay.
But when you talk about, you know, when is Mr. Mann ever going to get up and say, “Well, you know what? They got my guy?” You know. That’s his lawyer. His obligation flows to one person, Don Perkins. Okay.
.... Now, what Bob Mann does is, he’s a paid lawyer to come in for Don Perkins. And he’s up here vouching for him.
R.11 (Trial Tr., Vol. IV, at 68-69). The prosecutor referred to the fact that Mann was Perkins’s “paid” attorney five additional times in his rebuttal, id. at 69-74, and repeatedly made statements tying the defense’s arguments to defense counsel Mann. See, e.g., id. at 78 (“[W]hen you listen to his comments on behalf of his client ....”); id. at 75 (“It’s offered to you by Mr. Perkins’ lawyer.”). Much of the prosecutor’s rebuttal, in fact, was directed towards defense counsel personally. See, e.g., id. at 75-76 (“Now, if they had guns, Mr. Mann, where are the guns?”); id. at 77-78 (“If that’s the case, Mr. Mann, you know, why isn’t he [told to identify] Anthony Patton?”).
In its review of habeas claims for prosecutorial misconduct, the Supreme Court has distinguished misconduct that implicates a constitutional right. Darden v. Wainwright, 477 U.S. 168, 181-82, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (“The prosecutors’ argument did not ... implicate other specific rights of the accused such as the right to counsel or the right to remain silent.” (emphasis added)); Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) (“This is not a case in which the State has denied a defendant the benefit of a specific provision of the Bill of Rights, such as the right to counsel, Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), or in which the prosecutor’s remarks so prejudiced a specific right, such as the privilege against compulsory self-incrimination, as to amount to a denial of that right. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).”). “When specific guarantees of the Bill of Rights are involved, [the Supreme Court] has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them.” Donnelly, 416 U.S. at 643, 94 S.Ct. 1868.
“[T]he right to be represented by counsel is among the most fundamental of rights.” Penson v. Ohio, 488 U.S. 75, 84, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); see also United States v. McDonald, 620 F.2d 559, 564 (5th Cir.1980) (“The right to counsel is so basic to all other rights that it must be accorded very careful treatment. Obvious and insidious attacks on the exer *835 cise of this constitutional right are antithetical to the concept of a fair trial.... ”). Accordingly, “[n]o prosecutor may employ language which denigrates the right of a criminal defendant to retain the counsel of his choice, or otherwise limits the fundamental due process right of an accused to present a vigorous defense.” Sizemore v. Fletcher, 921 F.2d 667, 671 (6th Cir.1990).
The Ninth Circuit, in granting a writ of habeas corpus under pre-AEDPA standards, discussed the prejudice that results from a prosecutor’s attacks on a defendant’s constitutional right to counsel:
At the outset, we feel it incumbent on us to note that in no situation in a criminal trial such as this one do we feel the mere act of hiring an attorney is probative in the least of the guilt or innocence of defendants. Lawyers in criminal cases are necessities not luxuries, and even the most innocent individuals do well to retain counsel. Neither is it accurate to state that defense counsel, in general, act in underhanded and unethical ways, and absent specific evidence in the record, no particular defense counsel can be maligned. Even though such prosecutorial expressions of belief are only intended ultimately to impute guilt to the accused, not only are they invalid for that purpose, they also severely damage an accused’s opportunity to present his case before the jury. It therefore is an impermissible strike at the very fundamental due process protections that the Fourteenth Amendment has made applicable to ensure an inherent fairness in our adversarial system of criminal justice. Furthermore, such tactics unquestionably tarnish the badge of evenhandedness and fairness that normally marks our system of justice and we readily presume because the principle is so fundamental that all attorneys are cognizant of it. Any abridgment of its sanctity therefore seems particularly unacceptable.
Bruno v. Rushen, 721 F.2d 1193, 1194-95 (9th Cir.1983) (internal quotation marks and citations omitted), cert. denied, 469 U.S. 920, 105 S.Ct. 302, 83 L.Ed.2d 236 (1984).
The prosecutor also effectively “conveyed to the jury a fundamental misconception of the role of defense counsel.” United States v. Friedman, 909 F.2d 705, 708-09 (2d Cir.1990) (reversing conviction on direct appeal because of prosecutor’s improper statements — including, inter alia, that defense counsel “try to get [defendants] off, perhaps even for high fees” and that defense counsel “will make any argument he can to get that guy off’). In stating that defense counsel’s “obligation flows to one person, Don Perkins,” R.ll (Trial Tr., Vol. IV, at 68), the prosecutor misled the jury regarding the basic principle of professional responsibility that an attorney has an obligation not only to his client but also to the court. See Model Rules Of Prof’l Conduct 3.3 (Candor Toward the Tribunal).
The prosecutor exacerbated the prejudice of his misconduct by indicating that he has a personal history with defense counsel: “And make no mistake about it, Mr. Mann’s been doing this a long time.” R.ll (Trial Tr., Vol. IV at 67); “We’s [sic] tried cases before. This isn’t the first time our paths have crossed.” Id. at 68. “[Em-proper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.” Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Further, in repeatedly addressing defense counsel personally throughout rebuttal, the prosecutor “encourage[d] the jury to focus on the conduct and role of [defense counsel] rather than on the evidence of [the defendant’s] guilt.” See United States v. Holmes, 413 F.3d 770, 775 (8th Cir.2005).
*836 The majority points out that the prosecutor’s comments were not related to the key evidence of Odums’s identification of Perkins and were limited to the rebuttal portion of the prosecution’s closing argument. But improper comments striking at a defendant’s right to counsel necessarily strikes at the heart of the case and permeates the entire trial. It is through his attorney that Perkins tests the government’s evidence at trial, which is one reason why the right to counsel is so fundamental in our adversarial system of justice. See Benson, 488 U.S. at 84, 109 S.Ct. 346. The prosecutor’s repeated references to “paid” defense counsel — made during the last argument heard by the jury before deliberations — prejudiced Perkins by impairing his ability to present a defense to the jury. See Bruno, 721 F.2d at 1195.
To be sure, defense counsel delivered his own attacks on the prosecution and their witnesses during his closing argument, which is relevant “to determine the[] effect [of the prosecutor’s improper comments] on the trial as a whole.” Darden, 477 U.S. at 182, 106 S.Ct. 2464 (citing United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)). Accordingly, this court has distinguished between personal attacks on defense counsel and statements about counsel based on “a reasonable inference to be drawn from defense counsel’s presentation of evidence and argument.” Byrd v. Collins, 209 F.3d 486, 536 (6th Cir.2000), cert. denied, 531 U.S. 1082, 121 S.Ct. 786, 148 L.Ed.2d 682 (2001). “ ‘Where there is conflicting testimony, it may be reasonable to infer and accordingly to argue, that one of the two sides is lying.’ ” Id. at 536 (quoting United States v. Collins, 78 F.3d 1021, 1040 (6th Cir.), cert. denied, 519 U.S. 872, 117 S.Ct. 189, 136 L.Ed.2d 127 (1996)). Thus, commentary on defense counsel’s credibility based on defense counsel’s presentation of the evidence or argument was warranted; commentary on defense counsel’s credibility based simply on the fact that Perkins paid counsel to represent him, however, was constitutionally impermissible.
Because the prosecutor’s repeated references to Perkins’s paid defense counsel directly implicated Perkins’s Sixth Amendment right to counsel, it was unreasonable for the state court to conclude that counsel was not ineffective for failing to object. Even if defense counsel did not want to risk receiving rebuke in front of the jury for his own conduct in closing, “[a]t the very least,” counsel should ask for a bench conference out of the hearing of the jury to request an appropriate instruction. Young, 470 U.S. at 13, 105 S.Ct. 1038. If defense counsel had asked for an appropriate instruction, “the jury would have heard from the judge that the prosecutor’s comments called for an improper and impermissible negative inference for [Perkins’s] exercise of his [Sixth] Amendment rights.” Girls v. Yanai, 501 F.3d 743, 757 (6th Cir.2007), cert. denied, -U.S.-, 129 S.Ct. 92, 172 L.Ed.2d 31 (2008). Furthermore, allowing the prosecutor to attack his client’s exercise of the Sixth Amendment right to counsel “cannot be characterized as litigation strategy.” Id.; accord Hodge v. Hurley, 426 F.3d 368, 386 (6th Cir.2005). Therefore, it was unreasonable for the state court to conclude that defense counsel’s failure to object — his failure to do anything to attempt to cure the prejudice of the repeated comments — did not amount to ineffective assistance of counsel.
Finally, this is not a case in which it is reasonable to conclude that the failure to cure such prejudicial comments implicating Perkins’s fundamental Sixth Amendment right to counsel does not “undermine confidence in the outcome” of the trial. Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The evidence against Perkins was not “overwhelming,” Darden, 477 U.S. at 182, 106 *837 S.Ct. 2464; rather, the case hinged on one witness’s identification of Perkins. Perhaps nothing better demonstrates the “reasonable probability that, but for counsel’s [ineffectiveness], the result of the [trial] would have been different,” Strickland, 466 U.S. at 694, 104 S.Ct. 2052, than the fact that Perkins’s first trial resulted in a hung jury. R.11-2 (State Court Docket at 6); cf. Sizemore, 921 F.2d at 671 (noting that the defendant’s first trial resulted in a hung jury as evidence that the proof of guilt was not overwhelming).
Accordingly, I would reverse the district court’s judgment and grant the petition for a writ of habeas corpus on Perkins’s claim that his counsel was ineffective for failing to object to the prosecutor’s repeated denigration of defense counsel’s credibility on the basis that he was “paid” to represent Perkins. I respectfully dissent.

. Perkins raised a separate prosecutorial-misconduct claim but admits that the claim is procedurally defaulted because counsel did not object to the prosecutor’s comments at trial. He argues that his claim of ineffective assistance of counsel for failure to object constitutes cause and prejudice to overcome the procedural default. See, e.g., Girts v. Yanai, 501 F.3d 743, 757-58 (6th Cir.2007), cert. denied, - U.S. -, 129 S.Ct. 92, 172 L.Ed.2d 31 (2008); Washington v. Hofbauer, 228 F.3d 689, 708 (6th Cir.2000).

. There is no question that the prosecutor’s statements attacking defense counsel were improper. Perkins, 2004 WL 2535107, at *5 ("We conclude that these comments improperly attacked the credibility of defense counsel and implied that defense counsel did not believe his own client, and was only making his arguments because defendant paid him.”).