J-A20034-21

2022 PA Super 89

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HUGH J. LANG | : | No. 401 WDA 2020 |

Appeal from the Order Entered March 9, 2020
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0001480-2019

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

OPINION BY McCAFFERY, J.:                                    **FILED:  May 16, 2022**

The Commonwealth appeals from the order entered in the Allegheny County Court of Common Pleas, granting Hugh J. Lang's (Appellee's) request for a new trial, following his non-jury conviction of sexual crimes against a minor.  The crux of this appeal concerns the admission of evidence that Appellee searched for legal counsel on the internet, before he was arrested or even implicated as a suspect in the underlying crime, and the Commonwealth used this evidence to show his consciousness of guilt.  On appeal, the Commonwealth argues the post-trial court[1] erred and abused its discretion

_____

[1] The Honorable Mark Tranquilli (trial court) presided over Appellee's non-jury trial, but for reasons unrelated to this matter, was removed from the bench prior to sentencing.  The case was reassigned to the Honorable Anthony M. Mariani (post-trial court), who presided over Appellee's sentencing hearing and post-sentence motions, and entered the order on appeal.

when it granted Appellee a new trial based on its determination that the admission of this evidence violated Appellee's constitutional due process rights. We hold that the post-trial court did not err or abuse its discretion when it found (1) Appellee's constitutional due process rights were violated, (2) the prejudicial value of the evidence outweighed its probative value, and (3) admission of evidence was not harmless error. Accordingly, we affirm.[2]

In June of 2001, Appellee allegedly sexually abused R.S. (Victim) at St. Therese Lisieux Roman Catholic parish located in Munhall, Pennsylvania. N.T., Non-Jury Trial, 11/6-8/19, at 100-01, 116-22. Victim did not report the abuse until August 17, 2018, when he called a child abuse hotline, and reported that Appellee had abused him 17 years earlier. *Id.* at 126, 156-57, 162-63. Subsequently, in March 2019, Appellee was charged with attempted aggravated indecent assault, indecent assault (three counts), indecent exposure, corruption of minors, sexual abuse of children (photographing), and unlawful contact with a minor [3] This case proceeded to trial on November 6, 2019, where the Commonwealth presented the following evidence:

> At trial, the alleged victim testified that he had been sexually abused by [Appellee] while [Appellee] was serving as a priest at St. Therese Lisieux Roman Catholic parish located in Munhall, Pennsylvania in 2001. The alleged victim testified that the abuse

---

[2] As we will discuss *supra*, the post-trial court also granted Appellee relief on his claim that one of his convictions was time-barred. The Commonwealth does not challenge that ruling on appeal.

[3] 18 Pa.C.S. §§ 901(a), 3126(a)(7), 3127(a), 6301(a)(1), 6312(b), 6318(a)(1).

occurred when he was eleven years old and attending altar server training at the church.  On one of the days during altar server training, the alleged victim and another boy had been fooling around at lunch.  According to the alleged victim, [Appellee] approached him and appeared angry.  The alleged victim was escorted to the side entrance of the church.  The alleged victim testified that [Appellee] then led him down to a room in the basement of the church where [Appellee] locked the door of the room behind them.  The alleged victim testified that [Appellee] criticized the alleged victim's dirty clothing and began tugging at his shirt.  The alleged victim testified that [Appellee] instructed him to remove his clothes.  According to the alleged victim, after he removed his clothes, [Appellee] took a photograph of him while he was naked.

The alleged victim testified that [Appellee] informed the alleged victim that he was a "troublemaker" and if he [did not] behave, [Appellee] would show the photograph to the other boys.  The alleged victim stated that he and [Appellee] sat on a bench where [Appellee] touched his shoulder, chest and between his buttocks.  [Appellee] then opened his own pants and directed [the alleged victim's] hand onto [his] penis to masturbate him.  [Appellee] ejaculated on the alleged victim's chest and leg.  [Appellee] provided the alleged victim with a handkerchief and told the victim to clean himself.  The alleged victim then returned to the other boys who were still eating lunch.  The alleged victim did not tell anyone about this experience when it occurred.

David Hamilton testified that he was a friend of the alleged victim when they were freshmen in high school.  Hamilton testified about an incident that occurred among a group of boys who were drinking alcohol in a cemetery.  When one of the boys made a comment about the alleged victim's Catholic high school and crudely joked about priests engaging in sex abuse, the alleged victim got very angry and stormed away from the group.  Mr. Hamilton testified that he followed the alleged victim.  When Mr. Hamilton caught up to the alleged victim, the alleged victim recounted details similar to those he testified about at trial concerning what had happened to him while at altar server's school.

Post-Trial Ct. Op., 1/7/21, at 3-4 (paragraph break inserted).

Moreover, relevant to this appeal,

[t]he Commonwealth also admitted evidence that on July 28, 2018, the Pennsylvania Office of Attorney General publicly released a Report which was prepared by the Fortieth Statewide Investigating Grand Jury (hereafter, "Report") disclosing results of an investigation into clergy abuse in the Commonwealth of Pennsylvania. The Report specifically named a number of priests accused of sexual misconduct and it contained entries in which the names of some priests were redacted. [Appellee's] name was not among those specifically identified in the Report. The Report garnered significant media attention when it was released. Over [Appellee's] objection, the Commonwealth also sought to admit evidence of internet searches recovered from an iPad that was seized from [Appellee's] residence pursuant to a search warrant. The evidence recovered from that iPad allegedly disclosed that internet searches were conducted for top Pittsburgh criminal attorneys on July 29, 2018, one day after the release of the Report. . . .

*Id.* at 4-5.

Appellee presented two factual witnesses — who contradicted some of Victim's account of the incident, such as the location of the altar serving camp, the adults who were supervising, participants in the camp, and the type of food provided for lunch — and three character witnesses. N.T., Non-Jury Trial, at 388-392, 425, 446-47, 451-53, 457-58. He also testified on his own behalf, and specifically denied ever sexually abusing Victim, and in fact, claimed he did not know Victim. *Id.* at 472.

On November 8, 2019, the trial court found Appellee guilty of one count each of unlawful contact with a minor, indecent exposure, corruption of minors, and three counts of indecent assault.[4] After the trial concluded, the

---

[4] The trial court found Appellee not guilty of attempted aggravated indecent assault and sexual abuse of children.

trial court judge was removed, and the post-trial court judge was assigned to Appellee's post-trial proceedings. On February 6, 2020, the post-trial court sentenced Appellee to an aggregate term of 9 months' to 2 years' incarceration, followed by 5 years' probation. Appellee filed a timely post-sentence motion on February 17, 2020,[5] arguing (1) the statute of limitations had run on his conviction of unlawful contact with a minor and (2) he was entitled to a new trial based on the erroneous admission of his internet searches under the theory of consciousness of guilt. *See* Appellant's Post-Sentence Motion, 2/17/20, at 3-7 (unpaginated). The Commonwealth did not contest the dismissal of the unlawful contact conviction, but maintained the trial court did not erroneously admit consciousness of guilt evidence. *See* Commonwealth's Response to [Appellant's] Post-Sentence Motion, 3/2/20, at 2, 4-6 (unpaginated).

On March 9, 2020, the post-trial court held a hearing, and that same day issued an order (1) dismissing Appellee's conviction of unlawful contact with a minor and vacating the corresponding sentence, and (2) vacating the sentence at Appellee's remaining counts and granting a new trial based on the alleged erroneous admission of evidence of his internet searches. Order, 3/9/20. Specifically, the post-trial court found Appellee's constitutional right

---

[5] Appellee was required to file post-sentence motions within 10 days of his sentencing, or by February 16, 2020. However, that day fell on a Sunday, and, therefore, Appellee had until the next business day, February 17, 2020, to timely file his post-sentence motions. *See* 1 Pa.C.S. 1908.

to due process was violated by the introduction of the internet search evidence "being presented and being material to the outcome of the case" and that the prejudicial impact of that evidence "outweighed any probative value." N.T., Post-Sentence Motion H'rg, 3/9/20, at 28, 31. The Commonwealth filed this timely appeal.[6]

The Commonwealth raises four issues on appeal:

1. [Whether] the [post-trial court] erred and abused [its] discretion in entertaining a constitutional due process argument based either on the 14th Amendment or the 6th Amendment since trial counsel did not object to admission of evidence on those grounds at trial. The only argument made by trial counsel was that the evidence was not relevant because it did not prove consciousness of guilt and that even if it did, the prejudice outweighed the probative value. That is the only basis upon which [the post-trial court] was permitted to make its ruling. The [post-trial court could not] act as an advocate for [Appellee] by raising a theory not raised at trial and newly appointed counsel could not (and did not) raise ineffectiveness for the narrow objection made by trial counsel.

2. [Whether] the [post-trial court] erred in finding that the [trial court] committed reversible error in allowing the Commonwealth to introduce, in a non-jury trial, the fact that [Appellee] conducted an internet search for criminal defense attorneys at a point where he was not charged with any type of criminal offense, as evidence

_____

[6] On March 16, 2020, the trial court directed the Commonwealth to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal within 21 days, or by Monday, April 6th. The Commonwealth's Rule 1925(b) statement, however, was not filed until April 7th. Nevertheless, we note April 6, 2020, fell within the ongoing COVID-19 judicial emergency. *See In re Gen. Statewide Jud. Emergency*, 228 A.3d 1283, 1285 (Pa. 2020) (suspending all time computations from March 19, 2020, through April 3, 2020); *In re Gen. Statewide Jud. Emergency*, 230 A.3d 1015 (Pa. 2020) (extending judicial emergency through June 1, 2020). Accordingly, we conclude the Commonwealth's Rule 1925(b) statement was timely filed.

of consciousness of guilt. The trial court properly considered the temporal relationship between publication of the Attorney General Report and the internet search.

3. [Whether the post-trial court] erred in ruling that the probative value of the evidence was outweighed by prejudice and that [the trial court] abused [its] discretion in admitting it and in considering it as consciousness of guilt.

4. [Whether] the [post-trial court] misinterpreted [the trial court's] remarks as to how [the court] would "fix" the evidentiary problem if [it] determined the evidence should not have been admitted. The [post-trial] court was obligated to conduct a harmless error analysis before finding admission to be reversible error.

Commonwealth's Brief at 4-5 (record citations omitted).

Since all of the Commonwealth's claims challenge the post-trial court's

grant of a new trial based on the purported erroneous admission of evidence,

our standard of review is as follows:

> With regard to the admission of evidence, we give the trial court broad discretion, and we will only reverse a trial court's decision to admit or deny evidence on a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error in judgment, but an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of the record.
>
> Relevance is the threshold for admissibility of evidence. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action.
>
> The court may exclude relevant evidence if its probative value is outweighed by a danger of . . . unfair prejudice. . . .
>
> However, [e]vidence will not be prohibited merely because it is harmful to the defendant. [E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based on something other than the legal

> propositions relevant to the case. . . . This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand[.]

***Commonwealth v. Talbert***, 129 A.3d 536, 539 (Pa. Super. 2015) (citations and quotation marks omitted).

A detailed summary of the post-trial court's ruling is necessary to understand the Commonwealth's arguments on appeal. Appellee requested a new trial based on the purported improper admission of his pre-arrest internet searches for criminal defense attorneys. Relying on case law from other jurisdictions,[7] the post-trial court opined: "[A] violation of the Fourteenth Amendment's right to a fair trial and due process of law occurs when a prosecutor is permitted to suggest to a jury that a defendant's pre-arrest efforts to retain an attorney are consistent with guilt." ***Id.*** at 8-9, *citing* ***Sizemore v. Fletcher***, 921 F.2d 667 (6th Cir. 1990); ***United States ex. Rel Macon v. Yeager***, 476 F.2d 613 (3rd Cir. 1973); ***State v. Angel T.***, 973 A.2d 1207, 1220 (Conn. 2009). Thus, the post-trial court concluded that admission of Appellee's pre-arrest internet searches for criminal attorneys was improper. Further, the court found the error was prejudicial, and not harmless, because the presiding judge stated the internet search evidence was "dispositive" in determining Appellee's guilt. ***Id.*** at 10, 18.

---

[7] The post-trial court acknowledged "there is no binding precedent regarding this issue in Pennsylvania." Post-Trial Ct. Op. at 8. However, the court did discuss, and distinguish, a non-precedential opinion published by this Court, ***Commonwealth v. Brackett***, 1053 EDA 2017, 2018 WL 3358603 (unpub. memo.) (Pa. Super. July 10, 2018), which we will address ***infra***.

The post-trial court also concluded the internet searches were inadmissible under the Pennsylvania Rules of Evidence. Post-Trial Ct. Op. at 15. The court found the probative value of the evidence to be "slight," considering the fact that Appellee was not named in the report, and was unaware if he was even under investigation at that time. *See id.* at 15-16. Further, the post-trial court concluded any probative value was "substantially outweighed by the prejudicial impact of the evidence." *Id.* at 16. Thus, the court opined a new trial was warranted. *Id.* at 19.

In its first claim on appeal, the Commonwealth argues the post-trial court abused its discretion when it granted Appellee a new trial based on "constitutional due process arguments [Appellee] did not preserve at trial." Commonwealth's Brief at 17. The Commonwealth avers that, during trial, Appellee objected to the introduction of his internet searches for criminal defense attorneys **only** on the bases of lack of foundation — which Appellee later withdrew — relevance, unfair prejudice, and that "it does not meet the standard [for] 'consciousness of guilt evidence.'" Commonwealth's Brief at 20 (record citation omitted). It maintains Appellee never objected on any constitutional grounds, but raised them for the first time in his post-sentence motions. *Id.* Furthermore, the Commonwealth insists Appellee's post-sentence motion did not specify "what his constitutional theory was," but simply cited cases that implicated his 6th Amendment right to counsel, although it noted one case mentioned the 14th Amendment due process right to a fair trial in *dicta*. *Id.* at 20-21. The Commonwealth emphasizes that an

objection to the admission of evidence must (1) be made "contemporaneously with its offering into evidence (at the latest)," and (2) state "the grounds upon which the objection is based . . . with specificity." **Id.** at 18 (citations omitted). Thus, the Commonwealth argues the post-trial court's ruling constituted an abuse of discretion because it granted relief based upon constitutional grounds that had been waived. **Id.** at 22-24.

We recognize that Appellee did not contemporaneously object to the admission of his internet searches for a criminal attorney on the specific constitutional basis upon which the post-trial court granted relief. The Commonwealth's first argument rests on that fact alone. However, a review of the post-trial court's comments at the post-sentence hearing, and its subsequent opinion, reveals the court ultimately determined the admission of the evidence violated Appellee's right to due process and a fair trial because the evidence did not, in fact, warrant an inference of consciousness of guilt — an argument Appellee did present at trial. **See** Post-Trial Ct. Op. at 8-10.

At the time of trial, counsel argued, *inter alia*, "this evidence . . . facially [does] not meet the standard of introduction on the basis of consciousness of guilt." N.T., Non-Jury Trial, at 353. A review of the post-trial court's comments during the post-sentence hearing reveals this determination was the underlying basis for the court's ruling. Indeed, the court stated that it "wholly disagree[d]" with the Commonwealth's assertion that the fact Appellee conducted an internet search for criminal attorneys **before** he was arrested or implicated in a crime implied he was "looking to protect himself." **See** N.T.,

- 10 -

Post-Sentence Motion H'rg, at 23. Rather, relying on cases from other jurisdictions, the post-trial court found that the fact the trial court relied on Appellee's internet searches for an attorney as "dispositive" evidence of his guilt, "absolutely infringe[d] on [Appellee's] right to a fair trial" and constituted a "due process issue[.]" *Id.* at 26.

Thus, because the post-trial court's determination that Appellee's constitutional rights were violated was rooted in the fact that the evidence at issue did not meet the consciousness of guilt standard, we conclude the post-trial court did not grant relief on a waived claim.

Nevertheless, even if we were to conclude trial counsel's failure to cite a constitutional objection waived that specific claim, we would still conclude the court had the authority to redress the error. First, we note that a trial court has the authority to address a potential ineffectiveness claim on direct appeal in limited circumstances:[8]

> [T]here may be an extraordinary case where the trial court, in the exercise of its discretion, determines that a claim (or claims) of ineffectiveness is both meritorious and apparent from the record so that immediate consideration and relief is warranted.

*Commonwealth v. Holmes*, 79 A.3d 562, 577 (Pa. 2013). Trial counsel's failure to object to a constitutional error — which the post-trial court found to

---

[8] We acknowledge that here, post-sentence counsel (who did not serve as trial counsel) did **not** specifically challenge trial counsel's effectiveness in the post-sentence motion, or during the post-sentence hearing.

be meritorious and apparent from the record — would constitute the type of "extraordinary case" described in **Holmes**.

Second, our Supreme Court permits trial courts to grant a new trial — even *sua sponte* — in limited circumstances, such as, when the interests of justice require it. **See Commonwealth v. Powell**, 590 A.2d 1240, 1243 (Pa. 1991). In **Powell**, the defendant was represented by the public defender's office. **Id.** at 1241. On the day of trial, his counsel became ill and was replaced with substitute counsel. **Id.** Substitute counsel requested a continuance to review the case properly, but the trial court denied the request. **Id.** After the defendant waived a jury trial and proceeded with substitute counsel, the trial court found him guilty of the charged offenses. **Id.** at 1241-42. The defendant obtained new counsel, and filed a motion for a new trial *nunc pro tunc* alleging the ineffectiveness of trial counsel. **Id.** at 1241. The trial court then granted the defendant a new trial "in the interests of justice." **Id.** The Pennsylvania Supreme Court affirmed, concluding: "A trial court has an immemorial right to grant a new trial, whenever, in its opinion, the justice of the particular case so requires." **Id.** at 1242 (citations and quotation marks omitted) ("[T]his Court has expressly approved of a trial court's granting a new trial, *sua sponte*, for the promotion of justice, if sufficient cause exists."). The Court opined:

> It is the trial judge's review of the conditions and activity surrounding the trial which leaves him or her in the best position to make determinations regarding the fairness of the process and its outcome. **It is apparent, therefore, if a trial court determines that the process has been unfair or prejudicial,**

> **even where the prejudice arises from actions of the court, it may, in the exercise of its discretionary powers, grant a new trial "in the interest of justice."**
>
> *    *    *
>
> **This concept of "in the interest of justice" is merely a recognition of the trial court's discretionary power to ensure the fairness of the proceedings during the adjudicatory stage.** . . .

*Id.* at 1243 (emphases added and citations omitted). Accordingly, even if we conclude Appellee waived his constitutional objection to the admission of the internet search evidence, the post-trial court had the authority, under ***Powell***, to grant a new trial *sua sponte* "in the interest of justice." ***See Powell***, 590 A.2d at 1243. The post-trial court's conclusion in the present case — that the admission of the internet search evidence violated Appellee's constitutional right to due process and a fair trial — would amount to such an "interest of justice" determination under ***Powell***.

Having concluded that the post-trial court did not grant Appellee relief on a waived claim, we must now consider whether the court properly determined that the admission of the internet search evidence violated Appellee's constitutional rights.

Preliminarily, we note the post-trial court explicitly stated it was not granting relief to Appellee on 6th Amendment grounds. N.T. Post-Sentence Motion H'rg, at 18; Post-Trial Ct. Op. at 8 n. 1. We acknowledge that the right to counsel under the 6th Amendment does not attach until adversarial proceedings have been initiated, which is not the case here. ***Commonwealth v. Arroyo***, 723 A.2d 162, 167 (Pa. 1999). However, we highlight that at the

post-sentence motion hearing, the Commonwealth stated the "distinction" between the present facts and a violation of the 6th Amendment occurs only when one "**actually consult[s]** with an attorney." *See* N.T. Post-Sentence Motion H'rg, at 18, 24-26 (emphasis added). The Commonwealth insisted that here, Appellee was merely searching for an attorney and, because he did not "speak to" or "hire" counsel, it was permitted to introduce the evidence as consciousness of guilt. *Id.* at 24. We conclude this is a distinction without a difference, which knocks on the door of Appellee's 6th Amendment right to counsel.

Acknowledging that there is no binding precedent in Pennsylvania, the post-trial court turned to the 14th Amendment and found that "legal authority in other jurisdictions fully support[ed its] conclusion that [a violation of] the Fourteenth Amendment's right to a fair trial and due process of law occurs when a prosecutor is permitted to suggest to a jury that a defendant's pre-arrest efforts to retain an attorney are consistent with guilt." Post-Trial Ct. Op. at 8. Our review of the legal authority cited by the post-trial court, as well as our independent research, leads us to the same conclusion.

We now review the three cases cited by the post-trial court to support its ruling. In **Macon**, the defendant sought *habeas corpus* relief for a conviction of manslaughter. **Macon**, 476 F.2d at 614-15. During closing argument at his jury trial, the prosecutor commented that the defendant had called his lawyer the day after the murder — before he was charged — and asked the jury to consider if that was an "act[ ] of innocence[.]" *Id.* at 614

(emphasis omitted). The defendant argued the "the prosecutor's statement concerning his telephone call to counsel sought, or at least may reasonably be expected to have tended, to raise in the minds of the jurors an inference of guilt and, as a result, penalized him for the exercise of his constitutional right to counsel." *Id.* at 615.

The Third Circuit agreed, concluding "the prosecutor's comment to the jury was constitutional error." *Macon*, 476 F.2d at 616. The Court opined: "[A] prosecutor's comment seeking to raise in the jurors' minds an inference of guilt from the defendant's constitutionally protected conduct constitutes a 'penalty' on the free exercise of a constitutional right." *Id.* at 615 (footnote omitted). Moreover, because the credibility of the defendant was "a central issue[,]" and the other evidence was not "'so overwhelming' that the constitutional error did not . . . contribute to the conviction[,]" the *Macon* Court concluded the error was not harmless; thus, the defendant was entitled to a new trial. *Id.* at 616-17.

The Sixth Circuit Court of Appeals considered a similar claim in *Sizemore*. In that case, the defendant, who owned part of a coal processing plant, was involved in a dispute with local independent truck drivers, who were protesting the plant's hiring of out-of-state drivers. *Sizemore*, 921 F.2d at 668. During a confrontation, shots were fired and two truck drivers were killed. *Id.* The defendant remained on the scene and spoke with a deputy sheriff. *Id.* He then met with his attorney at the scene, before any charges were filed. *Id.* During closing arguments, the prosecutor referred to the

defendant's "convenient attorney . . . who had been with him from within five minutes of the killing to the very end." *Id.* at 669 (citation omitted). The Sixth Circuit concluded "the prosecutor's comments could have misled the jury and were prejudicial." *Id.* at 671. The Court opined:

> A prosecutor may not imply that an accused's decision to meet with counsel, even shortly after the incident giving rise to a criminal indictment, implies guilt. Neither may she suggest to the jury that a defendant hires an attorney in order to generate an alibi, "take[ ] care of everything" or "get [his] story straight." Such statements strike at the core of the right to counsel, and must not be permitted.

*Id.* (citations omitted). As in *Macon*, the *Sizemore* Court determined it could not "say beyond a reasonable doubt that the prosecutor's misconduct was harmless error." *Id.*

Lastly, the post-trial court relied upon a decision of the Supreme Court of Connecticut in *Angel T.* In that case, the prosecutor elicited evidence of, and commented during closing arguments about, "the fact that the defendant . . . had obtained representation by an attorney during the police investigation of the crimes at issue." *Angel T.*, 973 A.2d at 1210. In determining the defendant was entitled to a new trial, the Connecticut Supreme Court noted that the "vast majority of the federal and state courts . . . have concluded that prosecutors may not suggest that a defendant's retention of counsel is inconsistent with his or her innocence." *Id.* at 1218 (footnote omitted). The Court held:

> We agree with those jurisdictions that have concluded that a prosecutor violates the due process clause of the [F]ourteenth

- 16 -

[A]mendment when he or she elicits, and argues about, evidence tending to suggest a criminal defendant's contact with an attorney prior to his arrest. In our view, this prohibition necessarily is founded in the [F]ourteenth [A]mendment due process assurances of a fair trial under which proscriptions on prosecutorial impropriety are rooted generally. Indeed, the [S]ixth [A]mendment right to counsel does not attach until the commencement of adversary judicial proceedings via the filing of the information at arraignment; and the separate and distinct [F]ifth [A]mendment right to counsel is limited to custodial interrogations by government agents, a situation not implicated in the present case, wherein the defendant had not made **any** statement to law enforcement authorities. Thus, because these particularized rights had not yet attached when the defendant contacted his attorney, they are not implicated directly by the prosecutor's conduct in the present case. Nevertheless, we are mindful that [m]ost jurors . . . are not schooled in the law; and that from such evidence and arguments, a juror might easily draw the inference . . . that it was [the defendant's] idea to seek counsel because he had done something for which he needed a lawyer to defend him. Accordingly, we view [e]vidence of a criminal defendant's consultation with an attorney [as] highly prejudicial, as it is likely to give rise to the improper inference that a defendant in a criminal case is, or at least believes himself to be, guilty.

*Id.* at 1220-21 (citations, quotation marks, and footnotes omitted) (emphasis in original). Moreover, similar to *Macon* and *Sizemore*, the *Angel T.* Court concluded the constitutional error was not harmless. *See id.* at 1228.

Our independent research has uncovered additional authority from other jurisdictions in support of the post-trial court's position. *See Marshall v. Hendricks*, 307 F.3d 36, 70-71, 76 (3rd Cir. 2002) (concluding prosecutor's comments pertaining to defendant's acquisition of counsel before arrest to imply his guilt were "improper," but nonetheless constituted harmless error); *Savidge V. Ryan*, 2010 WL 2822783, at *5, *10, *16 (E.D. Cal., July 15, 2010) (concluding that prosecutor's comments implying guilt from defendant's

choice to contact legal counsel after being accused of, but before being arrested for, sexual misconduct were improper and not harmless error); ***Commonwealth v. Person***, 508 N.E.2d 88, 91-92 (Mass. 1987) (prosecutor's closing argument that "sought to have the jury draw an inference of guilt from the defendant's decision to consult an attorney promptly after [a] shooting" constituted prejudicial error justifying the grant of a new trial).

We recognize that these decisions are not binding precedent on this Court. ***See Commonwealth v. Arthur***, 62 A.3d 424, 429 n. 9 (Pa. Super. 2013) (decisions of federal courts, as well as those from "sister states," are not binding on this court, but may be used as persuasive authority). Nevertheless, we may consider federal court decisions, and opinions of other states, as persuasive authority. ***See id.*** As noted above, the only Pennsylvania case to discuss on its merits pre-arrest efforts to obtain counsel is ***Brackett***, an unpublished memorandum decision of this Court.[9] The

---

[9] We acknowledge our Supreme Court faced a similar set of facts in ***Commonwealth v. Colavita***, 993 A.2d 874 (Pa. 2010). However, it determined the issue was waived.

In ***Colavita***, the defendant contacted an attorney regarding his involvement in a murder about two days after the incident, but before he was accused of or arrested for any criminal activity. ***Colavita***, 993 A.2d at 879-80. Both the Commonwealth and defense counsel addressed his pre-arrest contact with legal counsel in their arguments and the defendant did not object to the Commonwealth's comments on any basis. ***Id.*** at 881. In fact, defense counsel asserted the defendant's actions did not demonstrate the malice

Commonwealth asserts, in a footnote, that the facts in **Brackett** are "substantially similar" to those before us, and, in that case, the panel ruled that evidence of the defendant's internet searches for an attorney prior to his arrest "was sufficiently relevant and not so unfairly prejudicial such that it was admissible." Commonwealth Brief at 33 fn. 9 (citation omitted). We agree with the post-trial court's determination that **Brackett** is not controlling under the circumstances presented *sub judice*. **See** Post-Trial Ct. Op. at 10-12.

In **Brackett**, the defendant, an employee at a facility with minor students, was accused of sexual misconduct with one of the students. **Brackett**, 2018 WL 3358603 at *1. After another student notified the facility director of potential sexual misconduct between the defendant and victim, the facility director confiscated the victim's phone and notified police of the situation. **Id.** The facility director gave the phone to police and indicated that

---

required for third degree murder. **Id.** at 882. On direct appeal, this Court affirmed the judgment of sentence.

The defendant filed a petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, alleging ineffective assistance for failure to object to the Commonwealth's comments under the 6th Amendment. **Colavita**, 993 A.2d at 882. The PCRA court denied the defendant's petition and he appealed to this Court. **Id.** at 882-83. This Court concluded the defendant's trial counsel was ineffective and granted him relief stating the Commonwealth's reference to pre-arrest contact with legal counsel violated his right to due process under the 14th Amendment. **Id.** at 884.

However, our Supreme Court ultimately concluded the defendant had waived this issue for lack of preservation and declined to address the claim on its merits. **Colavita**, 993 A.2d at 898. Thus, **Colavita** is distinguishable from the present case due to the differing procedural posture.

the victim and defendant discussed instances of sexual misconduct and exchanged naked images and sexually explicit text messages. *Id.* The victim called the defendant using another phone to notify him the facility director confiscated her phone with these text messages. *Id.* The defendant was placed on administrative suspension. *Id.* After becoming aware of the accusations of sexual misconduct against him, the defendant conducted internet searches for, *inter alia*, criminal defense attorneys for sex crimes. *Id.* At the defendant's subsequent trial, the court, over his objection, admitted evidence "of the online searches [the defendant] conducted after he became aware that he was the subject of a police investigation." *Id.* at *3 (footnote omitted).

On direct appeal, a panel of this Court affirmed the trial court's decision to admit evidence of the defendant's internet searches. The ***Brackett*** panel concluded the evidence "provided insight as to [the defendant's] state of mind . . . following his initial notification from [the victim] that [her] cell phone . . . had been confiscated by [the facility director.]" ***Brackett***, 2018 WL 3358603 at *5. The panel further opined "[t]he jury could reasonably infer from the content of the cellular evidence that [the defendant] was concerned about inculpatory evidence being recovered from [the] cell phone[.]" *Id.* Thus, the panel discerned no abuse of discretion in the trial court's ruling admitting the evidence. *Id.*

As noted above, the post-trial court in the present case "did not find ***Brackett*** persuasive" authority for several reasons. Post-Trial Ct. Op. at 11.

First, it noted that **Brackett** is "a non-precedential decision and not binding" on the post-trial court. **Id.** Second, the defendant in **Brackett** "was fully aware that he was accused of sexual misconduct" at the time he conducted the internet searches at issue — unlike Appellee, herein, who searched for criminal attorneys after the Report was published, but before he was implicated in any crime. **Id.** Third, the post-trial court emphasized that the **Brackett** panel "never analyzed [the defendant's] claims under the Fourteenth Amendment or any other constitutional provision." **Id.**

We agree with the post-trial court's conclusions. Namely, here, unlike in **Brackett**, Appellee had not been accused of any crime when he conducted the internet search for criminal defense attorneys. Indeed, there was no mention of him in the Report, nor any indication that he would be later implicated in any criminal offense. Thus, we agree the evidence of his internet searches would not provide "insight as to [his] state of mind" following an accusation of criminal behavior, unlike the defendant in **Brackett**. **See Brackett**, 2018 WL 3358603, at *5. Therefore, even if **Brackett** were a precedential decision, it would not be controlling as it is clearly distinguishable from the facts at issue.

Thus, we conclude the post-trial court properly determined the admission of evidence of Appellee's internet searches for criminal defense attorneys, before he was charged or implicated in any offenses, violated his constitutional right to due process and a fair trial. Furthermore, we agree with the post-trial court's determination that the error was not harmless — and in

- 21 -

fact, was prejudicial — based upon the trial court's (*i.e.* fact finder's) statement that this evidence was "dispositive" in reaching its guilty verdict. *See* Post-Trial Ct. Op. at 10, 12; *see also* N.T., Non-Jury Trial, at 567-68 ("It's significant to this Court and, in fact, **dispositive** to this Court, that [Appellee] was searching for attorneys the day after the published report was released . . . and that, in fact, he was concerned that his name was one of the names that was redacted.") (emphasis added). The Commonwealth suggests the court simply meant that the internet search evidence was "the final piece of evidence that convinced [it] beyond a reasonable doubt[.]" Commonwealth's Brief at 39 (quotation marks omitted). We disagree. As the post-trial court explained, "in common legal parlance[, dispositive] means that it was the **determining factor** that resolved the relevant legal issue before the trial court." Post-Trial Ct. Op. at 10 (emphasis added); *see also* Dispositive, Black's Law Dictionary (11th ed. 2019) (defining dispositive as "[b]eing a deciding factor; (of a fact or factor) bringing about a final determination").

Accordingly, we conclude the post-trial court did not abuse its discretion when it found the admission of evidence of Appellee's internet searches for criminal attorneys violated his constitutional right to due process and a fair trial, and that the error was prejudicial so that Appellee is entitled to a new trial.

In its next two claims, the Commonwealth argues the post-trial court also abused its discretion when it determined the admission of Appellee's

internet search evidence violated the Pennsylvania Rules of Evidence because it was not relevant and was unfairly prejudicial. Commonwealth's Brief at 26, 34.

As discussed above, the admission of evidence is within the broad discretion of the trial court. *Talbert*, 129 A.3d at 539. After concluding evidence meets the threshold for relevancy, the trial court must determine whether it is unfairly prejudicial to the defendant. *Id.*; Pa.R.Ev. 403 (relevant evidence may be excluded if it will cause unfair prejudice). While the trial court need not "sanitize" the record of all negative inferences against a defendant, it must preclude evidence that would "inflame" the fact finder into "mak[ing] a decision based on something other than the legal propositions relevant to the case." *Talbert*, 129 A.3d at 539.

Here, the post-trial court concluded "the probative value of the internet searches was slight and the potential prejudicial impact of the evidence substantially outweighed whatever probative value existed." Post-Trial Ct. Op. at 15. Further, the post-trial court questioned the Commonwealth's argument that Appellee's searches showed consciousness of guilt when "[Appellee] had no specific reason to believe that he was or would be under investigation for any type of sex offense." *Id.* at 15-16. The post-trial court concluded that because the alleged victim did not accuse Appellee of any criminal activity "until long after" the internet searches, there was no "sufficient nexus" between the events, and, thus the evidence was not relevant nor did its probative value outweigh its prejudicial impact. *Id.* at 16.

- 23 -

We agree with the post-trial court that the prejudicial impact of the evidence far outweighed its probative value. As discussed *supra*, the trial court found the internet searches "dispositive" in its decision. Post-Trial Ct. Op. at 10, 12; N.T., Non-Jury Trial, at 567-68 ("It's significant to this Court and, in fact, **dispositive** to this Court, that [Appellee] was searching for attorneys the day after the published report was released[.]") (emphasis added). Therefore, it is clear this evidence tipped the trial court's decision in favor of the Commonwealth. Further, without a sufficient nexus to prove consciousness of guilt - the purpose for which the Commonwealth sought to admit the evidence - it was not relevant to Appellee's guilt. Accordingly, there can be no question that this erroneously admitted evidence prejudiced Appellee at his bench trial.

In its final claim on appeal, the Commonwealth contends the post-trial court neglected to conduct a harmless error analysis before granting Appellee a new trial, and violated the coordinate jurisdiction rule. Commonwealth's Brief at 43. The Commonwealth avers that, although the post-trial court did provide a harmless error analysis in its opinion, it was "infected with [Appellee's] unpreserved constitutional arguments[.]" *Id.* Ultimately, the Commonwealth argues this Court should "disregard [the post-trial court's] harmless error analysis" because "no error occurred, so a harmless error analysis is not needed." *Id.* at 45. The Commonwealth further maintains the post-trial court "violated the coordinate jurisdiction rule" because it had "no

basis" to "overrule [the trial court's] finally-decided legal question." ***Id.*** at 47-48.

We agree with the post-trial court's conclusion that "it is patently clear that the erroneous admission of the evidence of the internet searches for attorneys cannot be harmless error" when the trial court ruled the searches were "dispositive" to its determination of guilt. Post-Trial Ct. Op. at 18. At the time it rendered its verdict, the trial court explained:

> [ ] I cannot say that I find that [Appellee] is a career pedophile [b]ecause I do not believe that to be the case. But I did watch him when he was on the stand, and when cross-examination started about those [i]nternet searches on July 29th, the [c]ourt detected a marked change in [Appellee's] demeanor consistent, not with an innocent individual, but rather, with a guilty individual.

N.T., Non-Jury Trial, at 568. The trial court then continued, stating it was "led to the inescapable conclusion" that Appellee was guilty. ***Id.*** The post-trial court's harmless error analysis and consideration of constitutional factors was proper and did not "infect" the analysis as the Commonwealth suggests. Further, "an error can be harmless only if the . . . court is convinced beyond a reasonable doubt that the error is harmless." ***Commonwealth v. Story***, 383 A.2d 155, 162 (Pa. 1978) (footnote omitted). "[T]he burden of establishing that the error was harmless beyond a reasonable doubt rests with the Commonwealth." ***Id.*** at 162 n. 11. Here, the Commonwealth presents no argument to satisfy its burden. Instead, it rests upon its assertion that no harmless error review was necessary because no error occurred. Commonwealth Brief at 45.

With regard to the Commonwealth's assertion that the coordinate jurisdiction rule was violated, we note that "[g]enerally, judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions." ***Commonwealth v. McCulligan***, 905 A.2d 983, 987 (Pa. Super. 2006) (citations and quotation marks omitted). However, the rule permits a post-trial court to correct "a mistake made by the trial judge during the trial process." ***Id.*** (citation omitted). To disregard a post-trial court's authority "to overrule legal errors made during the trial process . . . would render the post-trial motion rules meaningless." ***Id.*** (citation omitted).

Here, the Commonwealth contends the post-trial court violated the coordinate jurisdiction rule simply because it insists the post-trial court's ruling was incorrect. Indeed, it argues the trial court determined that the internet search evidence was admissible, and thus, the post-trial court had "no basis . . . to come swooping in during post-sentence motions and overrule a judge of coordinate jurisdiction on a finally-decided legal question." Commonwealth's Brief at 48. As explained above, we agree with the post-trial court's ruling that the trial court admitted the evidence in error. Accordingly, there is no violation of the coordinate jurisdiction rule. ***See McCulligan***, 905 A.2d at 987.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/16/2022