J-A18001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MOSES C. NORRIS | : | |
| | : | |
| Appellant | : | No. 813 WDA 2023 |

Appeal from the Judgment of Sentence Entered November 22, 2022
In the Court of Common Pleas of Clearfield County Criminal Division at
No(s): CP-17-CR-0000418-2021

BEFORE: OLSON, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED: February 7, 2025**

Appellant, Moses C. Norris, appeals from the judgment of sentence entered on November 22, 2022, following his jury trial convictions for two counts each of rape of a child and statutory sexual assault, three counts each of criminal attempt of rape of a child and involuntary deviate sexual intercourse with a child, and six counts each of corruption of minors and indecent assault of a person less than 13 years of age.[1] For the reasons set forth below, we are constrained to vacate Appellant's convictions and remand for a new trial.

We briefly summarize the facts of this case as follows. In December 2020, E.N. (a female born 3/09) and her sister, S.N. (a female born 8/10) told

_____

[1] 18 Pa.C.S.A. §§ 3121(c), 3122.1(b), 901(a), 3123(b), 6301(a)(1)(ii), and 3126(a)(7), respectively. The jury also found Appellant not guilty of two counts each of indecent assault of a child and corruption of minors. 18 Pa.C.S.A §§ 3126(a)(7) and 6301(a)(1)(ii).

their parents that Appellant, their step-grandfather, sexually assaulted and raped them for approximately three years. At that time, S.N. was 10 years old and E.N. was 11 years old. In January 2021, their parents took the children to the Clearfield County Children Advocacy Center ("CAC") for forensic interviews. In March 2021, S.N. and E.N. were interviewed a second time at CAC. On April 5, 2021, the police filed a criminal complaint against Appellant alleging the foregoing charges. Important to this appeal, in January 2022, S.N. was interviewed at CAC for a third time.

On September 6, 2022, the trial court held a hearing on pre-trial motions.[2] Part of the focus of the September 2022 pre-trial hearing was the third interview of S.N. at CAC. Ultimately, the trial court determined that the third CAC interview of S.N. was "unreliable and repetitive" and, therefore, irrelevant, inadmissible, and precluded from trial.[3] ***See*** N.T., 9/6/2022, at 4.

_____

[2] Senior Judge Daniel J. Milliron presided over the September 6, 2022 pre-trial hearing and subsequent trial. On July 10, 2023, after post-trial motions were deemed denied by operation of law, Appellant filed a motion to appoint a new trial judge because Judge Milliron was "gravely ill" and unavailable. Senior Judge Jeffrey K. Sprecher was subsequently appointed. As discussed more fully below, Judge Sprecher authored an opinion pursuant to Pa.R.A.P. 1925(a) wherein he found multiple evidentiary errors and opined that Appellant was entitled to a new trial because of those erroneous missteps.

[3] Counsel for Appellant argued that the third CAC interview was relevant to show undue influence on the part of S.N.'s parents. More specifically, at the interview, S.N. told the forensic interviewer that she had more to say because "her mom and dad told [her] what parts [she] missed when asked why she's there" for a third time. N.T., 9/6/2022, at 9. Rather than allowing Appellant to introduce evidence to the jury regarding the third CAC interview the trial court stated that Appellant could cross-examine S.N., and her testifying
*(Footnote Continued Next Page)*

The trial court further precluded Appellant from calling proffered witnesses to testify that E.N. and S.N. had a reputation for dishonesty in the community. *Id.* at 27-28. While the trial court observed it would "probably get reversed[,]" it explained that it would not allow witnesses "to diminish the reputation of an 11-year-old alleged rape victim." *Id.* at 28.

A three-day jury trial commenced on September 7, 2022. On September 9, 2022, the jury found Appellant guilty of the aforementioned crimes. On November 22, 2022, the trial court sentenced Appellant to an aggregate sentence of 27 to 54 years of incarceration. The trial court also classified Appellant as a sexually violent predator ("SVP"). On January 3, 2023, Appellant filed a post-sentence motion which was ultimately deemed denied by operation of law on June 26, 2023.[4] On July 11, 2023, Appellant filed a timely notice of appeal.[5]

_____

parents, and ask them if anyone told S.N. what to say in her third CAC interview. *Id.* at 10. The trial court also acknowledged it would "be shocked if the defense [did not] say that mom and dad coached the kids." *Id.* at 38.

[4] Generally, a post-sentence motion shall be filed no later than 10 days after the imposition of sentence. *See* Pa.R.Crim.P. 720(A)(1). However, upon review of the record, at sentencing, the trial court indicated that Appellant could file post-sentence motions 10 days after receipt of the trial transcripts. *See* N.T., 11/22/2022, at 34. Upon review of the record, we recognize that Appellant complied timely by filing a post-sentence motion before the transcripts were officially filed. Accordingly, we deem Appellant's post-sentence motion timely.

[5] On August 16, 2023, Appellant filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On September 26, 2023, Judge Sprecher requested the parties submit briefs regarding the issues
*(Footnote Continued Next Page)*

On appeal, Appellant presents four issues[6] for our review:

I.    Whether the trial court erred by precluding Appellant from presenting reputation witnesses for the victim[s'] untruthfulness in a case of he said – she said [when there was no] physical evidence or corroborating witnesses [presented?]

II.   Whether the trial court erred by ruling the "third [CAC] interview" was inadmissible when it contained powerful evidence of bias and fabrication[?]

III.  Whether the trial court committed an error of law requiring reversal by allowing the Commonwealth twice to elicit from Dr. Aswathappa, the complainants' pediatrician, that both victims were diagnosed and treated by him as having anxiety from "suspected child abuse," and burning and bleeding during urination[?]

IV.   Whether the trial court erred by allowing Mary Tatum to testify as to alleged statistics from the Clearfield County CAC regarding the presence of injuries for the sole purpose of bolstering the children's credibility?

Appellant's Brief at 4 (unnecessary capitalization omitted).

---

presented and held a hearing on October 24, 2023.  In an opinion pursuant to Pa.R.A.P. 1925(a) filed on December 28, 2023, Judge Sprecher determined, *inter alia*, that Appellant was entitled to a new trial based upon cumulative trial errors including "the exclusion of [S.N.'s] third CAC interview, the [improperly admitted opinion] testimony of Dr. [Sathya] Aswathappa[, the children's pediatrician, statistical evidence impermissibly] testified to by [CAC advocate and forensic interviewer] Mary Tatum, and the preclusion of [Appellant's proffered] reputation witnesses[.]"  Trial Court Opinion, 12/28/2023, at 30.

[6] Appellant raised a total of 11 allegations of error in his Rule 1925(b) concise statement, all of which the trial court addressed in its Rule 1925(a) opinion. Appellant, however, has abandoned seven of those claims on appeal and we find those issues waived.  **See Commonwealth v. Sipps**, 225 A.3d 1110, 1112 n.2 (Pa. Super. 2019) (issues raised in a Rule 1925(b) statement which are not raised and developed in the appellate brief are waived).

All of Appellant's issues challenge the trial court's evidentiary rulings and our Supreme Court has previously determined:

It is well settled that evidentiary rulings are within the sound discretion of trial courts. *See*, *e.g.*, *Commonwealth v. Laird*, 988 A.2d 618, 636 (Pa. 2010) (explaining that "the decision to admit or exclude evidence is committed to the trial court's sound discretion"). Accordingly, when a party [who is aggrieved by an evidentiary ruling] seeks appellate review of that determination, that party carries a heavy burden to demonstrate that the trial court abused its discretion. *Commonwealth v. Norton*, 201 A.3d 112, 120 (Pa. 2019). An appellant cannot meet this burden by simply persuading an appellate court that it may have reached a different conclusion than that reached by the trial court; rather, to overcome this heavy burden, the appellant must demonstrate that the trial court actually abused its discretionary power. *Id.*

Regarding the abuse of discretion standard of review, [our Supreme] Court has explained that the term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the trial judge." *Commonwealth v. Gill*, 206 A.3d 459, 466 (Pa. 2019) (internal quotation marks and citation omitted). Absent an abuse of that discretion, an appellate court should not disturb a trial court's discretionary ruling. *Id.* An appellate court will not find an abuse of discretion based on a mere error of judgment, but rather where the trial court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. *Id.* at 466-467.

Importantly, an appellate court should not find that a trial court abused its discretion merely because the appellate court disagrees with the trial court's conclusion. *Id.* at 467. Indeed, when reviewing the trial court's exercise of discretion, it is improper for an appellate court to step into the shoes of the trial judge and review the evidence *de novo*. *Id.* (internal quotation marks omitted). In other words, an appellate court may not disturb a trial court's discretionary ruling by substituting its own judgment for that of the trial court. *Id.* (internal quotation marks omitted).

*Commonwealth v. DiStefano*, 265 A.3d 290, 297–298 (Pa. 2021) (internal quotations, original brackets and ellipses omitted).

Based upon our standard of review, and an examination of the record and applicable law, we agree with Judge Sprecher's assessment that Judge Milliron erred with regard to all four evidentiary issues as currently presented. We will briefly examine each contention in turn.

First, Appellant claims that the trial court erred by precluding witnesses proffered to testify about the complainants' reputation. Appellant's Brief at 13-20. Pennsylvania Rule of Evidence 608 provides, in pertinent part:

> (a) Reputation evidence. A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked. Opinion testimony about the witness's character for truthfulness or untruthfulness is not admissible.

Pa.R.E. 608(a); *see also* Pa.R.E. 608, Comment ("Under Pa.R.E. 608(a), opinion testimony is not admissible."). "The character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct." Pa.R.E. 608(b)(1). Accordingly, when "the defense [is] attempting to introduce one individual's opinion as to the victim's capacity for deceit [such] testimony would properly be excluded." *Commonwealth v. Butler*, 621 A.2d 630, 632 (Pa. Super. 1993) (*en banc*) (internal citation omitted), *appeal denied*, 629 A.2d 1376 (Pa. 1993). However, when "the defense [is] trying to introduce general reputation evidence for truth and veracity, [] that is a

valid line of attack" and if such evidence is improperly precluded from trial, "we must reverse the judgment of sentence and remand for a new trial." *Id.* In this case, Judge Sprecher opined that because the trial court "did not hear testimony, within or without the presence of the jury, from [Appellant's] five (5) reputation witnesses[,]" it could not be "determined that the reputation witnesses would have relied upon specific instances of untruthfulness rather than reputation in the community." Trial Court Opinion, 12/28/2023, at 15. Because Pa.R.E. 608 "permits a witness's testimony to be impeached with reputation evidence and this case depended on the [c]omplainants' character for truthfulness[,]" Judge Sprecher opined that Appellant was entitled to a new trial. *Id.* at 15-16. Based upon the law set forth in detail above, we agree. Without exploration or even preliminary evaluation, the trial court precluded any and all reputation evidence pertaining to the complainants. The court's decision did not represent a dispassionate exercise of judgment, but instead was undertaken to give effect to the will of the trial judge. Such error constitutes an abuse of discretion and warrants a new trial.

Next, Appellant contends that the trial court erred by ruling that the third CAC interview was inadmissible and irrelevant as repetitive of the first two interviews. Appellant's Brief at 20-27. "During her third interview, when asked what S.N. was there to talk about[,] S.N. tells interviewer Mary Tatum that she has returned because her parents told her she missed some parts and specifically told her what parts she missed." *Id.* at 21. Appellant argues that the recording of the S.N.'s third CAC interview showed that "the parents

instigated S.N.'s return to the CAC so she could add new events to her narrative." *Id.* at 22. Appellant maintains that the third interview should have been shown to the jury to show the complainant's "motivation to lie, her parents' intention to help implicate [] Appellant, and the parents' control over what the children were saying to authorities … at least, in part for financial gain." *Id.* at 26. Accordingly, Appellant posits that he is entitled to a new trial. *Id.* at 27.

Here, Judge Sprecher agreed, opining:

The evidence in this case shows a large family at best divided; at worst at war with each other. This evidence includes S.N.'s father confronting his siblings at [the home of the children's grandmother] to deal with the horrible events that were just revealed to him by both S.N. and E.N. Also, the family division became very personal to S.N. especially in her classroom, regarding the conflicts with her Aunt Kim, who was her teacher. This is exemplified between her second CAC interview and the third. Due to this conflict, she [changed schools]. These rifts inside the family resulted with some taking sides with [g]randma and [Appellant] and some supporting S.N. and E.N. and their immediate family.

It is possible that [M]om and [D]ad intentionally motivated S.N. and E.N. The facts include that [M]om and [D]ad sued [Appellant]. Mom and Dad did not file said lawsuit until six (6) weeks after [Appellant's] jury trial conviction, complainants' parents also filed an injunction to freeze [Appellant's] assets. According to S.N.'s testimony[, M]om and [D]ad continued to bring her back for further interviews with instructions to totally disclose this or that to specifically inform the CAC of more information of what was done by [Appellant and that S.N.] ha[d] radically changed her recollection of the facts.

Influence or no influence, it's without a doubt that S.N. in a short period of time ha[d] drastically changed both what [Appellant] did to her and her vocabulary.

Trial Court Opinion, 12/28/2023, at 9-10.

The trial court opined that "[e]ven if most of the third interview was repetitive," Appellant should have been permitted to show the jury the third CAC interview wherein S.N. stated that her "[M]om and [D]ad told her what parts [she] missed" before. *Id.* at 18. Ultimately, on this issue, the trial court concluded:

> [T]his case depended entirely upon the credibility of the complainants, as there was no physical evidence of the offenses alleged. The statement made by S.N. at her third interview was the archetypal example of bias or motive to fabricate testimony. The statement made by S.N. was essential proof supporting [Appellant's] allegation that she alone or both of complainant's parents were behind what [Appellant] suggests was fabrication for financial reasons. S.N.'s statement may indicate the possibility that the complainants were coached by their parents in making some, if not all, their statements. Had the defense been allowed to show this part of the third interview at trial, the defense could have impeached S.N. postulating that S.N. and possibly E.N. lied because their parents asked them to.

*Id.* at 18. As such, the trial court concluded it was error to rule the third CAC interview with S.N. inadmissible at trial. *Id.* at 22.

Moreover, "[r]elevance is the threshold for admissibility of evidence." ***Commonwealth v. Lang***, 275 A.3d 1072, 1078 (Pa. Super. 2022) (citation omitted). "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence." *Id.* (citation and original brackets omitted). Our Supreme Court has stated that "[a]n accused has a fundamental right to present evidence so long as the evidence is relevant and not excluded by an established evidentiary rule." ***Commonwealth v. Ward***,

- 9 -

605 A.2d 796 (Pa. 1992). Evidence of a witness's "motive for false testimony" is "relevant to his motivation and credibility." **Commonwealth v. Dawson**, 405 A.2d 1230, 1231 (Pa. 1979). As such, our Supreme Court has "establish[ed] a right to cross-examine a witness to show a motive for fabricating testimony." **Commonwealth v. Robinson**, 491 A.2d 107, 109 (Pa. 1985) (citation omitted).

Here, there is no dispute that S.N. stated in her third CAC interview that her parents suggested she return and report additional information. Her statement that her parents precipitated the third interview would be relevant to Appellant's defense that the complainants and/or their parents had a motive for fabricating evidence and, ultimately, goes to their credibility. As such, it was error for the trial court to have precluded the third recorded CAC interview as duplicative or repetitive of the other interviews shown to the jury. For this additional reason, Appellant is entitled to a new trial.

In his third allegation of error, Appellant argues that the trial court impermissibly allowed the Commonwealth to twice elicit, from the complainants' pediatrician, that he diagnosed and treated them for "suspected child abuse." Appellant's Brief at 27-37. Appellant contends that the Commonwealth was prohibited from eliciting testimony from an expert regarding the credibility of the child complainants. *Id.* at 28, *citing* 42

Pa.C.S.A. § 5920(b)(3).[7]   Appellant maintains that Dr. Aswathappa "did not testify to general physical findings and how they might be consistent with sexual abuse." *Id.* at 33.  Instead, Appellant posits:

> While Dr. Aswathappa never explicitly stated that he concluded the children were telling the truth, it was evident from his testimony he believed both complainants had in fact been sexually abused, suffered anxiety from the abuse and suffered burning and bleeding during urination as a direct result of this abuse.  This testimony is indirect vouching and far outside the constraints of Section 5920.

*Id.*

Upon review, we agree.  Our Supreme Court has held that "an expert witness may not express an opinion that a particular complainant was a victim

---

[7]   More specifically, Section 5920 (expert testimony in certain criminal proceedings) provides, in pertinent part:

> **(b) Qualifications and use of experts.—**
>
> (1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence or domestic violence, that will assist the trier of fact in understanding the dynamics of sexual violence or domestic violence, victim responses to sexual violence or domestic violence and the impact of sexual violence or domestic violence on victims during and after being assaulted.
>
> *                *                *
>
> (3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

42 Pa.S.C.A. § 5920(b)(1)-(3).

of sexual assault based upon witness accounts couched as a history, at least in the absence of physical evidence of abuse" because "such testimony intrudes into the province of the jury relative to determining credibility." ***Commonwealth v. Maconeghy***, 171 A.3d 707, 712 (Pa. 2017). Accordingly, our Supreme Court concluded that "expert testimony opining that a child has been sexually abused—which is predicated on witness accounts and not physical findings—is inadmissible." ***Id.*** at 715. Here, upon review of the notes of testimony from trial, Dr. Aswathappa did not witness or testify about physical evidence of sexual assault; instead, he offered his opinion that symptoms of anxiety and bleeding during urination that presented later in the complainants were caused by their self-reported abuse. ***See*** N.T., 7/7/2022, at 118-127. Because an expert witness may not express an opinion that a particular complainant was a victim of sexual assault based upon witness accounts couched as a history, in the absence of physical evidence of abuse, Dr. Aswathappa's testimony usurped the jury's credibility determination. Accordingly, Appellant's third issue warrants relief.

Finally, Appellant argues that the trial court erred by allowing CAC interviewer, Mary Tatum, to testify about alleged Clearfield County statistics pertaining to the presence of physical injuries in conjunction with reporting. Appellant's Brief at 28-30. "Tatum testified that only 4[%] or 5% of children that purportedly visited the Clearfield CAC showed injuries." ***Id.*** at 40. Appellant maintains that Tatum did not qualify as an expert, this testimony

was outside of her report, and the evidence was prejudicial and only offered to bolster the complainants' credibility. *Id.* at 38 and 41.

Initially, we note that the Commonwealth concedes that it did "not explicitly establish[] Tatum as an expert[.]" Commonwealth's Brief at 39. Moreover, Judge Sprecher recognized:

> While it may be true that Dr. Tatum is an expert and may or may not have been qualified in other court proceedings, she was not called as an expert [in] this trial nor was she qualified as an expert by the [trial c]ourt. Further, Dr. Tatum offered statistics that lacked credible foundation, were derived by unknown methodology, and included cases from an unknown period of time. If she had been called as an expert, Dr. Tatum would have been required to provide in a written report the facts and data that she relied upon to form her opinions. While it is likely that Dr. Tatum is familiar with the aforementioned statistics through her work, without foundation and data to support her opinion and without the [trial c]ourt recognizing her as a[n expert] witness for this trial, Dr. Tatum's testimony with regard to the statistics of children who appear [for CAC interviews] with physical or medical evidence was extremely prejudicial to [Appellant] and should [have been precluded]. This prejudice increase[d] tenfold when coupled with the fact that the [d]efense was unable to prepare for adequate cross-examination, was not on notice of the statistic to which she was going to testify [and, therefore, could not] prevent the admission of the testimony before [trial by motion or otherwise allow Appellant] to offer [his] own expert to rebut Dr. Tatum's testimony.

Trial Court Opinion, 12/28/2023, at 30.

Upon review of the certified record, we agree with the trial court's assessment. Tatum was not qualified as expert in this matter and the Commonwealth did not offer a proper foundation for the proffered statistics.

- 13 -

There was no basis for Tatum's testimony and, therefore, it was improperly admitted and prejudicial.[8]  Hence, Appellant's final issue has merit.

Accordingly, we conclude that all four evidentiary errors warrant a new trial.[9]  As such, we vacate Appellant's judgment of sentence and remand for additional proceedings.

Judgment of sentence vacated.  Case remanded for additional proceedings.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

2/7/2025

_____

[8]  We, however, do not foreclose the Commonwealth from using Tatum as an expert, should there be a new trial wherein she testifies.  Moreover, if the Commonwealth wishes to reintroduce the aforementioned statistics into evidence upon retrial, it must follow the appropriate rules of evidence and criminal procedure before and during trial.

[9]  Finally, we recognize that evidentiary errors do not warrant relief if the Commonwealth demonstrates, beyond a reasonable doubt, that the errors were harmless. ***See Commonwealth v. Fitzpatrick***, 255 A.3d 452, 483 (Pa. 2021).  Here, however, the Commonwealth does not argue that any one of the four alleged errors was harmless. Instead, the Commonwealth argues that there were no evidentiary errors.  Moreover, under the facts and circumstances of this case taken as a whole, we cannot conclude that these errors were harmless.